[Nos. A025926, A025931, A026646. First Dist., Div. Three. Oct. 23, 1984.]

JOHN P. REILLY, Petitioner, v.
JAY R. STROH, as Director, etc., Respondent.

**[Opinion certified for partial publication.*]**

---

*Certified for publication except as to parts III and IV. (Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

Westphal, Ellner, DiFranza & Portman, Kenneth B. Ellner and Edward Steinman for Petitioner.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Matthew P. Boyle and Mary C. Michel, Deputy Attorneys General, for Respondent.

OPINION

**WHITE, P. J.**—The licensee of Fargo's Pizza and Spaghetti Company in Mountain View (Fargo's) challenges three rulings by the Alcoholic Beverage Control Appeals Board (the board) affirming the decisions of the Department of Alcoholic Beverage Control (the department) suspending his "bona fide public eating place" on-sale beer and wine license. The suspensions were imposed for permitting persons under 21 years of age to drink alcoholic beverages. Petitioner asserts that he is caught between laws which require him to admit adults between 18 and 21 years of age and laws which hold him responsible if those same adults drink alcoholic beverages on his premises. He contends that he has done all he can to curb the underage drinking and that his license should not be suspended for his lack of success. In the published portion of this opinion, we conclude that the suspensions were proper, petitioner having failed to take the obvious step of segregating those under drinking age from those permitted to drink.[1] We do not reach the question of whether petitioner must admit those between 18 and 21 years of age.

Three separate petitions by the Fargo's licensee are considered together here. Each concerns a suspension based upon a multicount accusation of permitting underage persons to consume alcoholic beverages on the premises. The incidents, some 12 in all, range from an 18-year-old taking 2 sips from a friend's beer to a 20-year-old purchasing 10 beers from a friend who was a bartender and knew he was underage. The most common violation was an underage person drinking a drink bought legally by a friend. The suspensions were for 15 days with 5 days suspended, 30 days with 5 days suspended, and 45 days with 15 days suspended. The incidents took place between May 1981 and June 1982.

Petitioner holds a "bona fide public eating place" on-sale beer and wine license (Bus. & Prof. Code, § 23038), which means that he has a suitable kitchen and serves meals to guests for compensation. It also means he is not *required* to prevent persons under 21 years of age from entering and remaining in the licensed premises. Only a licensee of a "public premises," as defined in Business and Professions Code section 23039, is required to exclude those under 21. (Bus. & Prof. Code, § 25665.)

Petitioner claims to have taken extraordinary steps to prevent the violations, all of which took place after 8 p.m., when the establishment changes

---

[1]In the unpublished portion of the opinion, we annul for lack of substantial evidence the board's ruling on one count of furnishing an alcoholic beverage to a person under 21.

character. Before 8 p.m., Fargo's operates much like any restaurant with a "bona fide public eating place" license. After 8 p.m. it provides live "rock and roll" entertainment and dancing and it attracts as many as 400 or 500 patrons. To control underage drinking, petitioner charges a $5 cover charge and has a system of stamping hands to indicate whether a patron is below or above drinking age. Nine to twelve staff members police the floor to check for violators. They are paid a $1 bounty for each person caught (16 to 30 per night on the nights in question). No one under 18 is allowed on the premises without a parent after 8 p.m. After 9 p.m., petitioner raises drink prices and prohibits sale by the pitcher or carafe. He uses different glasses for alcoholic and nonalcoholic beverages, and has a warning about underage drinking on his menu.

I

Business and Professions Code section 24200, subdivision (b), authorizes suspension of an alcoholic beverage license upon "the violation or the causing or the permitting of a violation by a licensee" of various rules or statutes regulating the sale, use, or possession of alcoholic beverages. The specific violations found here involved subdivisions (a) and (b) of Business and Professions Code section 25658, as follows: "(a) Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor. [¶] (b) Any person under the age of 21 years who purchases any alcoholic beverage, or any person under the age of 21 years who consumes any alcoholic beverage in any on-sale premises, is guilty of a misdemeanor and shall be punished by a fine of not less than two hundred dollars ($200), no part of which shall be suspended."

"A licentiate conducting the sale of beverages under an on-sale license is charged with an active duty to prevent minors from consuming intoxicating liquor on the licensed premises, and if the licentiate, through an employee, has knowledge that such consumption is taking place, there arises immediately an active duty to prevent its continuance. A failure to prevent it is within the meaning of the statute a permitting of that unlawful consumption." (*Marcucci* v. *Board of Equalization* (1956) 138 Cal.App.2d 605, 610 [292 P.2d 264]; *5501 Hollywood, Inc.* v. *Dept. Alc. Control* (1957) 155 Cal.App.2d 748, 753 [318 P.2d 820]; cf. *Givens* v. *Dept. Alcoholic Bev. Control* (1959) 176 Cal.App.2d 529, 533-534 [1 Cal.Rptr. 446].)

Petitioner's major contention is that he should not have been penalized for "permitting" underage consumption on his premises because he has done all he can to prevent such consumption. His argument is grounded,

in part, upon an assumption that because of the Unruh Civil Rights Act and because 18 is the age of majority in California he cannot prevent those between 18 and 21 from entering his premises. He makes the further assumption that he cannot even segregate those between 18 and 21 from those above the drinking age. He contends that this circumstance justifies reexamination of the above-cited case law and other similar decisions insofar as they justify suspending the license of an owner who has made the kind of efforts he has made to prevent underage drinking.

Civil Code section 51, known as the Unruh Civil Rights Act, provides in part that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accomodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." In *In re Cox* (1970) 3 Cal.3d 205, 216 [90 Cal.Rptr. 24, 474 P.2d 992], the Supreme Court ruled that the "identification of particular bases of discrimination—color, race, religion, ancestry, and national origin— . . . *is illustrative rather than restrictive.* [Citation.] Although the legislation has been invoked primarily by persons alleging discrimination on racial grounds, its language and its history compel the conclusion that the Legislature intended to prohibit all arbitrary discrimination by business establishments." (Italics added.)

More recently, the California Supreme Court has applied the Unruh Civil Rights Act to bar discrimination in rental housing and in condominium association rules directed against families with children under 18 years of age. (See *Marina Point, Ltd.* v. *Wolfson* (1982) 30 Cal.3d 721 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161]; *O'Connor* v. *Village Green Owners Assn.* (1983) 33 Cal.3d 790 [191 Cal.Rptr. 320, 662 P.2d 427].) Drawing upon these decisions, and noting the present age of majority in California, petitioner contends that he would violate the act were he to bar those between 18 and 21 years of age from his premises. Borrowing from *Brown* v. *Board of Education* (1954) 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180], and other decisions preventing segregation in public facilities, petitioner argues that he could not even segregate underage patrons from those over 21 without violating the law.

Whether petitioner may discriminate between the two classes of adults he presently permits to mingle in his premises depends upon whether such a classification would be termed "arbitrary" within the meaning of *Cox*. Petitioner contends that it is "arbitrary" to bar those between 18 and 21 simply because some in that group might violate the law and as adults they may not be given paternalistic protection. He notes that while all those under 21 are barred from on-sale licensed "public premises" (Bus. & Prof. Code,

§ 25665), they are not barred by statute from entering "bona fide eating places," such as petitioner's.

We need not decide whether petitioner may bar entry to those adults under 21, because the right to segregate such adults is clear. Although those between 18 and 21 are adults for most purposes, the California Constitution provides that "[t]he sale, furnishing, giving, or causing to be sold, furnished, or giving [*sic*] away of any alcoholic beverage to any person under the age of 21 years is hereby prohibited, and no person shall sell, furnish, give, or cause to be sold, furnished, or given away any alcoholic beverage to any person under the age of 21 years, and no person under the age of 21 years shall purchase any alcoholic beverage." (Cal. Const., art. XX, § 22.) If the segregation of those between 18 and 21 is required to ensure compliance with this constitutional provision, such segregation is not arbitrary. *Marina Point, Ltd.* v. *Wolfson, supra,* 30 Cal.3d 721, 741, hinted as much when it stated: "Unlike the exclusion of children from bars or adult book stores or movie theaters, the Marina Point complex's exclusionary policy cannot, of course, be defended by reference to any statutorily sanctioned restriction on the activities of children. (Cf., e.g., Bus. & Prof. Code, § 25658 (furnishing alcoholic beverages to person under 21); Pen. Code, § 313.1 (distributing 'harmful matter' to a minor).)"

■ While those between 18 and 21 cannot be categorized as "children," they have been placed in the same class as those under 18 for purposes of alcoholic beverage consumption. They may be excluded from "bars" (i.e., "public premises") to promote the constitutional objective of preventing alcoholic beverage consumption by persons under 21. By the same reasoning, they may be segregated in "bona fide eating places" if, as petitioner asserts, underage drinking cannot otherwise be controlled.[2]

■ Petitioner has created an atmosphere conducive to the mixing of alcohol with persons between 18 and 21. He has a choice of either conducting his operation in a different manner (e.g., increase staff, decrease clientele, cater to an older crowd), or segregating those under 21 from those able to drink legally. Having chosen not to segregate those under 21, he cannot now defend the charges by arguing that he has made the best of the bad situation he created.

---

[2]Unlike the racial segregation cases cited by petitioner (e.g., *Johnson* v. *Virginia* (1963) 373 U.S. 61 [10 L.Ed.2d 195, 83 S.Ct. 1053]; *Brown* v. *Board of Education* (1954) 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180]), this is a situation where the two groups to be segregated are distinguished from each other by a valid law, and the segregation is designed to further the objective of the distinction.

## II

Petitioner correctly observes that the bulk of the cases discussing license suspensions for permitting minors to drink arose before 1971, when the age of majority was lowered to 18. He contends that the cases should be reevaluated to take into account the owner's obligation to permit those between 18 and 21 to enter his "bona fide eating place."

Having concluded that petitioner could have segregated those under 21 from those above the legal drinking age, we see no reason to reevaluate the precedents cited. The change in the age of majority has not placed an intolerable burden on the licensee.

■ Petitioner also contends that Business and Professions Code section 24200, subdivision (b) is vague and uncertain and has been made more so by the change in the age of majority. Petitioner focuses upon the words "cause" and "permit" and asks what a licensee must do to avoid a finding that he has caused or permitted underage drinking. He contends that the cases that have attempted to define the word "permit" in the alcoholic beverage control context have not provided adequate notice.

In *Harris* v. *Alcoholic Bev. Con. Appeals Bd.* (1963) 212 Cal.App.2d 106, 123-124 [28 Cal.Rptr. 74], the court defined permit: "The word ' "permit" implies no affirmative act. It involves no intent. It is mere passivity, abstaining from preventative action.' [Citation.]" Petitioner argues that this definition is unclear because it does not explain how much preventative action a person must take. But *Marcucci* v. *Board of Equalization, supra,* 138 Cal.App.2d 605, 610, quoted earlier, answers that question: "if the licentiate, through an employee, has knowledge that such consumption is taking place, there arises immediately an active duty to prevent its continuance. A failure to prevent it is within the meaning of the statute a permitting of that unlawful consumption." Thus, when *Harris* says "abstaining from preventative action," it means abstaining from the action that *in fact prevents,* not abstaining from any action to try to prevent. A licensee with knowledge of the underage drinking violates section 24200, subdivision (b) if he does not *in fact* prevent underage drinking (subject, of course to the defense that the licensee may rely upon an apparently valid identification—Bus. & Prof. Code, § 25660).

Petitioner presents an elaborate argument that under case law it is enough to take some measures to prevent or curb violations, even if the measures are not successful. The basis for the argument is language in *Kershaw* v. *Dept. Alcoholic Bev. Control* (1957) 155 Cal.App.2d 544, 548 [318 P.2d 494], where the court noted that the licensee had observed some of the

offending conduct and "took no measures to prevent or curb it." Petitioner reads this as establishing a test of whether the licensee took steps to prevent or curb the violation; if he did, according to petitioner, and particularly if his measure exceeded the standards of licensees in the community, he should not be penalized for imperfect results.

The comment of the *Kershaw* court regarding failure of its licensees to take preventative measures does not establish the converse principle that all a licensee must do is seek to prevent the violations. The language of *Kershaw* must give way to the standard set by *Harris* and *Marcucci, supra.* The word "permit," as interpreted by *Harris* and *Marcucci,* has a clear meaning. Petitioner has merely undertaken a search for a meaning more favorable to his position and has come up with a distorted interpretation of dicta in *Kershaw.*

III*

. . . . . . . . . . . . . . . . . . . . . . .

The decisions of the board in A025926 and A025931 are affirmed. The decision of the board in A026646 is annulled and the matter is remanded to the department for reconsideration of the penalty.

Scott, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied November 15, 1984, and petitioner's application for a hearing by the Supreme Court in No. A026646 was denied December 20, 1984. Mosk, J., was of the opinion that the application should be granted.

---

*Parts III and IV of this opinion are not certified for publication. (See fn., *ante,* at p. 47.)