[No. D008947. Fourth Dist., Div. One. Mar. 24, 1989.]

McFADDIN SAN DIEGO 1130, INC., Petitioner, v.
JAY STROH, as Director, etc., et al., Respondents.

1386

**COUNSEL**

Haskins, Nugent, Newnham, Kane & Zvetina and Cheryl M. Ruffier for Petitioner.

John K. Van de Kamp, Attorney General, Marilyn K. Mayer, Deputy Attorney General, and William B. Eley for Respondents.

## OPINION

**WIENER, Acting P. J.**—Petitioner, McFaddin San Diego 1130, Inc., doing business as Confetti (Confetti), seeks a writ of review after the Alcoholic Beverage Control Appeals Board (the Board) upheld the Department of Alcoholic Beverage Control's (the Department) suspension of its liquor license under Business and Professions Code section 24200, subdivision (a).[1] The Department in its charging accusation alleged Confetti permitted or suffered its premises to be used in a manner which created conditions contrary to the public welfare and morals through permitting specified cocaine sales. ▮ ▮ ▮ ▮ Thus we can affirm the Department's decision only if the facts support a determination Confetti "permitted or suffered" the drug transactions to be carried out on its premises.[2] ▮ As more fully discussed below, the facts as found by the Department (i.e., Confetti did not know of the drug transactions and further had taken extensive preventive measures) do not support such a determination. Accordingly, we grant the petition.[3]

[1] Section 24200 provides in pertinent part: "The following are the grounds which constitute a basis for the suspension or revocation of licenses;

"(a) When the continuance of the license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Section 22 of Article XX of the California Constitution."

All statutory references are to the Business and Professions Code unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[2] While administrative pleading is not bound by the strict rules applicable to pleading in court proceedings, a respondent must be informed of the substance of the charges and afforded appropriate elements of procedural due process. (See *Stearns* v. *Fair Employment Practice Com.* (1971) 6 Cal.3d 205, 212-213 [98 Cal.Rptr. 467, 490 P.2d 1155]; *Vallerga* v. *Dept. Alcoholic Bev. Control* (1959) 53 Cal.2d 313, 321 [1 Cal.Rptr. 494, 347 P.2d 909]; Gov. Code, § 11503.) Where a respondent is misled to his prejudice in maintaining his defense a variance between the pleadings and proof may be deemed material. (See *Stearns, supra,* 6 Cal.3d at pp. 212-213; *Cooper* v. *Board of Medical Examiners* (1975) 49 Cal.App.3d 931, 941-942 [123 Cal.Rptr. 563]; Code Civ. Proc., § 469.) Here, we conclude the accusation led Confetti to believe its liability was premised on it having "permitted" the drug transactions. A review of the hearing transcript demonstrates Confetti conducted its defense accordingly.

[3] In light of our approach to this case in which we analyze the issues in the context of the pleadings, we do not reach the question whether under section 24200(a) the Department could suspend or revoke a license based solely on the occurrence of the drug transactions. We have declined to address this question despite the parties' overtures to do so.

The parties acknowledge that under section 24200(a) and article XX, section 22, of the state Constitution a license can be suspended only for good cause. They differ however on what constitutes good cause. At oral argument Confetti argued that suspension of a license is

## FACTUAL AND PROCEDURAL BACKGROUND[4]

Confetti is a large (7,500 square feet), popular San Diego disco which serves an average of 650 patrons nightly. On weekends there are as many as 1,500 patrons generally ranging from 21 to 36 years of age. It has three bars at three different levels. In February 1986 Confetti employed 90 people.

From January 31, 1986, until February 21, 1986, the San Diego Police Department conducted an undercover operation. Three female undercover officers on an almost daily basis posed as Confetti patrons in an effort to buy narcotics from Confetti employees or patrons. On six occasions the officers bought small amounts of cocaine from four different patrons. At the completion of the undercover operation, the police raided Confetti, arrested certain patrons and searched the Confetti premises and employees. They found no controlled substances.

The Department filed the underlying accusation alleging Confetti through its agents and employees permitted or suffered its premises to be used in a manner which created conditions contrary to the public welfare and morals in violation of article XX, section 22,[5] of the California Constitution and section 24200(a) (i.e., unknown employees permitted four patrons on six occasions to unlawfully sell or otherwise distribute cocaine and a bartender conspired to sell and furnish cocaine to the undercover officers.) As an additional ground for suspension or revocation of the license, the Department alleged Confetti permitted the violation of section 24200.5(a).[6]

not penal in nature but is a mechanism by which incompetent, ignorant or dishonest licensees can be removed from the licensed business. (See *Lacabanne Properties Inc.* v. *Dept. Alcoholic Bev. Control* (1968) 261 Cal.App.2d 181, 190 [67 Cal.Rptr. 734].) Therefore good cause for suspension does not exist where a licensee does not know or should not have known of the violation and took all reasonable measures to prevent it. The Board however argued that the mere fact a licensee is open for business and drug transactions take place on the premises is sufficient for liability under the section without regard to preventive measures taken, the licensee's knowledge, or presumably the extent of the drug dealing. In other words the licensee is held strictly liable for the acts of its patrons. While the Department was more equivocal in its statements it appears to essentially adopt the Board's position.

While we do not reach the difficult question whether a licensee can have its license suspended or revoked without fault, we assume the pleadings here, presumably comparable to pleadings in other cases, reflect the Department's concern with the potential unfairness and possible unlawfulness of suspending or revoking a license if the licensee is blameless.

[4] The facts relied upon are those set forth in the Department's decision and the uncontested facts set forth in the petition for review.

[5] Article XX, section 22, provides in pertinent part: "The department shall have the power, in its discretion, to . . . suspend . . . any specific alcoholic beverage license if it shall determine for good cause that the . . . continuance of such license would be contrary to public welfare or morals, . . ."

[6] Section 24200.5 provides in pertinent part: "Notwithstanding the provisions of Section 24200, the department shall revoke a license upon any of the following grounds: (a) If a retail

The administrative law judge found that Confetti through its agents and employees permitted its premises to be used in a manner that created conditions contrary to public welfare and morals in violation of article XX, section 22, and section 24200(a), basing her conclusion on specific findings four patrons had unlawfully sold or furnished cocaine to the undercover agents on six occasions. However, as to two of the transactions, the administrative law judge concluded it was not established Confetti employees had permitted the sales. As to another transaction, she found it was not established Confetti employees were involved in or aware of it. As to the remaining three transactions, she found it was not established any employee knew or reasonably should have known of the transactions.

The administrative law judge also found the bartender accused of conspiring to sell or furnish cocaine knew certain patrons were involved in illicit drug activity but it was not established his conduct constituted a conspiracy to sell or furnish controlled substances. Finally, she found Confetti diligently attempted to control narcotics trafficking on its premises and it was not established Confetti knowingly permitted the cocaine sales.

She determined grounds for the suspension or revocation of Confetti's license existed under section 24200(a) based on the occurrence of the sales of the narcotics and further determined there were no grounds for revocation of the license under section 24200.5 because it was not established Confetti knowingly permitted the sales.

The Department adopted the proposed decision which decision Confetti appealed to the Board. After correcting what the Board characterized as "typographical error[s]," the Board affirmed the decision. These proceedings ensued.

### DISCUSSION

### I

Does the operator of a nightclub "permit" the sale of narcotics on its premises if the operator diligently attempts to control such sales and the operator and its employees do not know, or should not reasonably know, of the specific drug transactions?

It is not necessary for a licensee to knowingly allow its premises to be used in a prohibited manner in order to be found to have permitted its use.

licensee has knowingly permitted the illegal sale, or negotiations for such sales, of controlled substances or dangerous drugs upon his licensed premises."

(See, e.g., *Mercurio* v. *Dept. Alcoholic etc. Control* (1956) 144 Cal.App.2d 626, 629-631 [301 P.2d 474].) ■ Further, "The word ' "permit" implies no affirmative act. It involves no intent. It is mere passivity, *abstaining from preventative action.'* " (*Harris* v. *Alcoholic Bev. Con. Appeals Bd.* (1963) 212 Cal.App.2d 106, 123 [28 Cal.Rptr. 74], quoting *Dorris* v. *McKamy* (1919) 40 Cal.App. 267, 274 [180 P. 645], italics added.)

■ We have not found a case where a licensee's preventive actions were sufficient to find the licensee did not permit its premises to be used in a manner contrary to the public welfare and morals.[7] However, *Harris, supra,* implies that such a situation may exist if a licensee takes the requisite preventive actions. (See also *Kershaw* v. *Dept. Alcoholic Bev. Control* (1957) 155 Cal.App.2d 544, 548 [318 P.2d 494] [finding licensee permitted prohibited behavior at least in part because licensee took no measures to curb or prevent behavior]; but see *Reilly* v. *Stroh* (1984) 161 Cal.App.3d 47, 54 [207 Cal.Rptr. 250] [in cases where a licensee has knowledge of underage drinking and does not prevent it " 'abstaining from preventative action,' . . . means abstaining from the action that *in fact prevents,* . . ."].) We conclude that where a licensee does not reasonably know of the specific drug transactions and further has taken all reasonable measures to prevent such transactions, the licensee does not "permit" the transactions.

## II

■ We turn now to the Department's decision to determine whether Confetti may be found to have permitted the cocaine sales as alleged in the accusation. The Department found Confetti through its employees "permitted" its premises to be used for the sale of illegal drugs. However, as to the specific transactions, the Department found the employees did not permit the sales or did not know, or should not reasonably have known, about the sales.

The Department also found Confetti had diligently attempted to control the trafficking "as much as possible" through "invoking stringent sanctions against the possession and usage of narcotics by its employees[8] and by

---

[7] A writ of mandate was issued to compel a board of supervisors to renew a license to operate a movie theater in part because the operator had used "every endeavor" to prevent the commission of lewd acts within his premises. (See *Tarbox* v. *Board of Supervisors* (1958) 163 Cal.App. 2d 373, 378 [329 P.2d 553].)

[8] Confetti's prevention measures as to its employees included: (1) including rules in employee handbook that use or possession of narcotics on the way to work, on the job, or on the premises was prohibited and would result in termination, (2) using employee polygraph tests to assure compliance with the rules, and (3) using undercover personnel to monitor activities of employees.

taking reasonable measures to control trafficking by its patrons through the posting of signs warning of citizen's arrest and prosecution . . . ." The sign admitted into evidence which was posted in all the restrooms stated:

"REWARD

"FOR INFORMATION LEADING TO THE ARREST AND CONVICTION OF ANY PERSON OR PERSONS COMMITTING A FELONY BY SELLING, GIVING AWAY, USING, OR ATTEMPTING TO DO SO; OR TO INDUCE ANY OTHER PERSON OR PERSONS TO COMMIT THE ACT OF SELLING, GIVING OR USING ANY NARCOTICS, PILLS OR DANGEROUS DRUGS, INCLUDING MARIJUANA, OR ANY ILLEGAL DRUGS ON THIS PREMISES SHALL BE SUBJECT TO CITIZEN'S ARREST AND PROSECUTION TO THE LIMIT OF THE LAW!

"THE MANAGEMENT"

The Department also found Confetti checked the restrooms every 10 minutes in its efforts to control narcotic trafficking.

Confetti's efforts to prevent drug trafficking were extensive. Additionally, the Department found no fault with those efforts. The record even contains evidence Confetti's efforts met with some success, no drugs being found on the premises or on the employees when police conducted the raid at the conclusion of its undercover operation.

Pursuant to section 23090.2,[9] our review of the Department's decision is limited to "whether the department proceeded illegally or exceeded its jurisdiction, whether relevant evidence was unavailable or improperly excluded, and whether the department's findings supported its decision and were themselves supported by substantial evidence." (*Department of Alcoholic Bev. Control* v. *Alcoholic Bev. etc. Appeals Bd.* (1981) 122 Cal.App.3d

---

[9] Section 23090.2 provides: "The review of the court shall not extend further than to determine, based on the whole record of the department as certified by the board, whether:
"(a) The department has proceeded without or in excess of its jurisdiction.
"(b) The department has proceeded in the manner required by law.
"(c) The decision of the department is supported by the findings.
"(d) The findings in the department's decision are supported by substantial evidence in light of the whole record.
"(e) There is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department.
"Nothing in this article shall permit the court to hold a trial de novo, to take evidence, or to exercise its independent judgment on the evidence."

549, 554 [175 Cal.Rptr. 342]; see also *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1972) 7 Cal.3d 433, 436 [102 Cal.Rptr. 857, 498 P.2d 1105].) ▮ Under the standard set forth in section I, *ante,* the Department's findings that Confetti attempted to control narcotic trafficking as much as possible and that it did not permit or have knowledge of the specific drug transactions do not support a determination Confetti "permitted" its premises to be used for illegal drug transactions thereby creating conditions contrary to the public welfare and morals. The Department's findings do not support a determination Confetti violated section 24200(a).

### III

▮ The Board recognized the inconsistencies in the Department's decision and attempted to rectify them by correcting what it described as "typographical error[s]." ▮ In addition, the Board contends that it can be inferred the administrative law judge found Confetti's drug prevention program wanting because she used the word "control" rather than "suppress" to describe Confetti's efforts to curtail drug activity. The Board's attempts are unsuccessful.

▮ As to two of the drug transactions, the Department found it was not established that any employee permitted the sale. This finding was facially inconsistent with the Department's general finding that Confetti through its employees permitted or suffered its premises to be used in all the sales. The Board held that the decision contained "typographical error[s]" and deemed the decision corrected by qualifying the word "permitted" in the two specific findings with the word "knowingly" (i.e., knowingly permitted.) Obviously more is involved here than typographical errors. But even if we assume the "errors" could be corrected, the "corrections" must still have evidentiary support. In light of our decision it is irrelevant whether the decision says the employees did not permit the sale or did not knowingly permit the sale. As discussed above, Confetti's diligent efforts to control drug trafficking coupled with its lack of knowledge of the specific drug transactions is inconsistent with finding Confetti permitted the drug transactions.

▮ From the Department's choice of the word "control" rather than "suppress" in its finding that Confetti diligently attempted to control narcotics trafficking, the Board infers Confetti's efforts were deficient. The Board additionally set forth how *it* considered Confetti's program to be deficient. We consider the use of the word control rather than suppress to be a matter of semantics and find nothing in the Department's decision that indicates the Department considered Confetti's drug program to be

insufficient. Rather the decision states that Confetti is diligent in its efforts to control the trafficking, that it invokes stringent sanctions as to its employees, that it takes reasonable measures to control trafficking by its patrons. In short that it does as much as possible. Review by the Board of the Department's decision is limited in the same manner as review by this court. (See Cal. Const., art. XX, § 22.) The Board may not infer for the Department that which is contrary to the decision.

The Board in its opinion argues the Department's finding that a bartender knew certain patrons were involved in illicit drug activity supports the Department's determination. However, the Department determined grounds for the suspension of the license existed because of the six specific drug transactions. There is no finding the bartender was involved in those transactions.

### DISPOSITION

The order of the Board and the decision of the Department are reversed.

Todd, J., and Huffman, J., concurred.

Respondents' petition for review by the Supreme Court was denied June 7, 1989.