[Civ. No. 22956. Third Dist. Jan. 25, 1984.]

GONZALES & CO., INC., Petitioner v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,
Respondent.

COUNSEL

McCutchen, Doyle, Brown & Enersen and James B. Lewis for Petitioner.

John H. Carley, Linda L. Tedeschi, Erika Wodinsky, Ralph E. Stone and Frederick E. Dooley, Jr., as Amici Curiae on behalf of Petitioner.

John K. Van de Kamp, Attorney General, Richard D. Martland, Chief Assistant Attorney General, N. Eugene Hill, Assistant Attorney General, and Robert L. Mukai, Deputy Attorney General, for Respondent.

OPINION

SIMS, J.—On May 12, 1983, petitioner, Gonzales & Co., Inc. (dba Taylor California Cellars, hereinafter Taylor) published an advertisement in 18 California newspapers offering a $1 rebate, plus postage, to retail purchasers of certain types of its wines. On May 16, 1983, Taylor received a letter from respondent Department of Alcoholic Beverage Control (hereinafter Department) advising Taylor that its promotion was unlawful and instructing Taylor to discontinue the offering or giving of rebates. The Department also issued a "Bulletin" to all wholesale and retail license holders in the state warning them that if they participated in Taylor's promotion they risked suspension or revocation of their licenses. Taylor sought mandate in this court alleging the Department's actions were in excess of its jurisdiction.[1] Taylor prays that this court issue a writ "compelling respon-

---

[1]Pursuant to Business and Professions Code section 23090.5, this court shares exclusive original jurisdiction with the Supreme Court to issue a writ of mandate to the Department.

dent to refrain from enforcing and threatening to enforce in any manner any interpretation of Business and Professions Code section 25600 as prohibiting cash rebates directly to consumers; . . ." (All statutory references are to the Business and Professions Code unless otherwise indicated.) We issued an alternative writ.

The central issue in this case is whether Taylor's rebate promotion violates section 25600 which provides: "No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale of any alcoholic beverage. Any person violating the provisions of this section is guilty of a misdemeanor." We conclude that a rebate is not a "premium, gift, or free goods" and issue a peremptory writ.

### DISCUSSION

In resolving the question of whether section 25600 prohibits rebates "the court 'turns first to the words themselves for the answer.'" (*Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 764 [150 Cal.Rptr. 785, 587 P.2d 227], quoting *People* v. *Knowles* (1950) 35 Cal.2d 175, 182 [217 P.2d 1]; and see *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]; *City of Anaheim* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 609, 613-614 [177 Cal.Rptr. 441].)  ■  Courts must give effect to the words of a statute according to their usual and ordinary meaning. (*California Teachers Assn.* v. *San Diego Community College Dist., supra,* 28 Cal.3d at p. 698; *Sanchez* v. *Alexis* (1982) 131 Cal.App.3d 709, 715 [182 Cal.Rptr. 593].)

At the outset, we prune away some obfuscative foliage by noting that Taylor's rebate is obviously neither a "gift" nor "free goods."  ■  A gift is commonly defined as "something that is voluntarily transferred by one person to another without compensation . . . ." (Webster's Third New Internat. Dict. (1981) p. 956.)[2] Taylor's rebate does not fall within the definition of "gift" because the rebate is inextricably bound up with a bargained exchange of reciprocal consideration: in order to receive Taylor's rebate, one has to purchase its wine.[3]  ■  Similarly, the $1 rebate is not

---

[2]The legal definition is in accord. "A gift is a transfer of personal property, made voluntarily, and without consideration." (Civ. Code, § 1146; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Personal Property, § 84, p. 1685.) Where personal property is transferred for more than nominal consideration, the transaction is not a gift. (*University of South. California* v. *Bryson* (1929) 103 Cal.App. 39, 45 [283 P.2d 949]; compare *Estate of Hall* (1908) 154 Cal. 527, 531 [98 P. 269].)

[3]The Department argues that Taylor's rebate is a gift because no purchase of wine is required. This argument is factually inaccurate in that Taylor's rebate offer clearly requires the purchase of its wine as a condition of receiving the rebate. Moreover, if the Department's factual premise were true, Taylor's promotion would not offend section 25600 because it would not be an offer "in connection with the sale of an alcoholic beverage."

"free goods" because "goods" does not ordinarily mean "money." Thus the word, "goods" is commonly defined as, "tangible movable personal property having intrinsic value [usually] excluding money . . . ." (Webster's, *op. cit. supra,* at p. 978.)[4]

As the parties recognize in their briefs, where they conduct a war of dictionary definitions, the hub of the matter is whether Taylor's rebate constitutes a "premium" for purposes of section 25600. ■ In this regard, the parties generally agree that a "rebate," in the context of this dispute, is "a retroactive abatement, credit, discount, or refund (as from a wholesaler to a retailer) [usually] as consideration for a specified volume of business . . . ." (Webster's, *op. cit. supra,* at p. 1892.) They disagree, however, with respect to whether a "rebate" is a "premium."

It is clear to us that the word "premium" may be commonly defined variously to include or exclude a "rebate." Thus, if "premium" is defined as "something . . . given without charge or at less than usual price with the purchase of a product or service" (Webster's, *op. cit. supra,* at p. 1789), then Taylor's $1 rebate arguably falls within the definition of "premium." On the other hand, if "premium" is defined as "something paid over and above a fixed wage, price, or other remuneration: BONUS . . ." (*ibid.*), then Taylor's rebate, arguably representing a refund of a portion of the purchase price, is not a "premium."

The parties ask us to resolve this semantic ambiguity by interpreting section 25600 in such a way that the statute furthers important public policies. The parties' respective policies are, however, dramatically different. The Department asks us to interpret the statute so as to outlaw Taylor's rebate to further the judicially recognized policy of promoting temperance (see *Rice* v. *Alcoholic Bev. etc. Appeals Bd.* (1978) 21 Cal.3d 431, 457 [146 Cal.Rptr. 585, 579 P.2d 476, 96 A.L.R.3d 613]), apparently upon the assumption (empirically undemonstrated on this record) that Taylor's rebate program will result in increased alcohol consumption. (See *Rice, supra,* at pp. 457-458.) Not surprisingly, Taylor and amicus curiae Federal Trade Commission ask that section 25600 be interpreted so as to encourage price competition. (See, e.g., *Rice, supra,* 21 Cal.3d at pp. 438-439; *Midcal Aluminum, Inc.* v. *Rice* (1979) 90 Cal.App.3d 979 [153 Cal.Rptr. 757], affd.

---

[4]California Uniform Commercial Code section 2105, subdivision (1) similarly provides in pertinent part: " 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid . . . ."

*sub. nom California Liquor Dealers* v. *Midcal Aluminum* (1980) 445 U.S. 97 [63 L.Ed.2d 233, 100 S.Ct. 937].)[5]

At this juncture, we find it unnecessary to referee this apparent clash of policies because we conclude statutory history demonstrates that "rebate" and "premium" have different meanings in the Alcoholic Beverage Control Act (hereinafter the Act). (§ 23000 et seq.)

We discover that the Legislature for many years recognized a distinction between a "rebate" and a "premium" in the Act. Section 25600, with its present wording, first appeared in 1937 as an amendment which added section 55.7 to the then uncodified Act of 1935. (Stats. 1937, ch. 758, § 89, p. 2174.) In 1949, the Legislature added section 55.65, subdivision (m) to the still uncodified Act, and that section provided in pertinent part as follows: "Except as otherwise provided in this section, the giving of, or offering to give, any *rebate,* free goods, . . . *premium,* . . . or any other thing or service of value, directly or indirectly, in connection with the sale of wine subject to this section, or, in any other way circumventing this section to effect a sale at a price other than the price shown in the applicable price schedule, shall be a violation of this section . . . ." (Stats. 1949, ch. 574, § 1, p. 1069, italics added.)

In 1953, when the Act was codified, former section 55.7 became section 25600 and former section 55.65, subdivision (m) was incorporated in section 24878. (Stats. 1953, ch. 152, § 1, pp. 1007, 1020.) Section 24878 was repealed, along with all other related alcohol price maintenance provisions, in 1980, (Stats. 1980, ch. 1368, § 5, p. 4963) following the decision of the United States Supreme Court in *California Liquor Dealers* v. *Midcal Aluminum, supra,* 445 U.S. 97 [63 L.Ed.2d 233], where the high court affirmed the opinion of this court that the price maintenance statutes violated the Sherman Act. (See *Midcal Aluminum, Inc.* v. *Rice, supra,* 90 Cal.App.3d 979.)

For present purposes, the importance of this history is that, for a period of 30 years, the relevant provisions of former section 24878 and of section 25600 lived together in the same Act. During this time, the word "rebate" appeared in the same sentence as the word "premium" in former section 24878.[6] The word "rebate" did not, however, appear in section 25600,

---

[5]Neither Taylor nor amicus argues that if section 25600 is interpreted so as to outlaw rebates, the statute would violate the Sherman Act. (15 U.S.C. § 1 et seq.) Rather, they simply contend the statute should be interpreted so as to further the desirable policy of allowing competition to reduce consumer prices. We do not address the Sherman Act.

[6]The word "rebate" also appeared in the same sentence as "free goods" and "the giving of . . . any . . . thing . . . of value" in former section 24878.

although, of course, the word "premium" did. From this comparison and history of the two statutes, a compelling inference may be drawn that the Legislature perceived a difference between a "rebate" and a "premium" and intended to distinguish between them in the Act.

■ An established canon of statutory construction is that significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose; a construction making some words surplusage is to be avoided. (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].) The Legislature is ordinarily not presumed to use statutory language in a sense which would render nugatory or redundant important provisions of the statute. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 647 [335 P.2d 672]; see *People* v. *Hawes* (1982) 129 Cal.App.3d 930, 939 [181 Cal.Rptr. 456].) We therefore assume that when the Legislature used the words "rebate" and "premium" in the same sentence in former section 24878, the Legislature intended that the words have different meanings.

The purposes of section 25600 and of former section 24878 were closely allied: during their coexistence in the Act, both statutes sought to outlaw certain transfers of consideration in connection with sales of alcohol. ■ "It is well-settled that statutes that '. . . are *in pari materia* . . . must be construed together. Accordingly, there being no contrary intention expressed by the Legislature, . . . [a word common to two such statutes] must be given the same meaning in each enactment. [Citations omitted.]' *Hunstock* v. *Estate Development Corp.* (1943) 22 Cal.2d 205, 210-211 [138 P.2d 1, 148 A.L.R. 968]; see also, 58 Cal.Jur.3d, Statutes, § 127, p. 521.)" (*Estate of Downing* (1982) 134 Cal.App.3d 256, 265 [184 Cal.Rptr. 511].) We therefore assume, in accordance with what we believe to be common sense, that "premium" meant the same thing in former section 24878 as it does in section 25600 and that it meant (and means) something different from "rebate."

■ Finally we note that, "The fact that a provision of a statute on a given subject is omitted from other statutes relating to a similar subject is indicative of a different legislative intent for each of the statutes. [Citations.] Where a statute with reference to one subject contains a certain vital word, omission of that word from a similar statute on the same subject is significant to show a different intention." (*Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 8 [125 Cal.Rptr. 408]; see *Estate of Simpson* (1954) 43 Cal.2d 594, 600 [275 P.2d 467, 47 A.L.R.2d 991]; *Ford Motor Co.* v. *County of Tulare* (1983) 145 Cal.App.3d 688, 691 [193 Cal.Rptr.

511]; *Foraker* v. *O'Brien* (1975) 50 Cal.App.3d 856, 863 [124 Cal.Rptr. 110].)

From the foregoing we infer that the Legislature did not intend to include a "rebate" as a "premium" within the meaning of section 25600. This inference of legislative intent is consistent with the ordinary understanding of rebate as a refund of a portion of the purchase price of a product constituting, ultimately, a mere reduction in the purchase price and not something extra (a "premium") given for the purchase of a product.

We hold that where a manufacturer of wine offers retail consumers a rebate of money, in the form of a refund of a portion of the retail price paid for the wine, the rebate does not constitute a "premium, gift, or free goods" within the meaning of section 25600 and is therefore not made unlawful by that statute.

We acknowledge, of course, the possibility that our conclusion, derived from an analysis of the statutory history of the Act, may incorrectly reflect the Legislature's current intent. However, if that be true, we see no point in speculating about what the Legislature might do in the future or about what issues might then arise. Suffice it to say that we can outlaw no rebate on wine before its time.

### DISPOSITION

Let a peremptory writ of mandate issue commanding respondent to refrain from undertaking any measures to curtail or restrain petitioner's consumer rebate program, as described in the petition on file herein, on the ground that said rebate program violates the provisions of Business and Professions Code section 25600.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied February 22, 1984, and respondent's petition for a hearing by the Supreme Court was denied May 2, 1984.