[No. C031851. Third Dist. Jan. 30, 2001.]

COORS BREWING COMPANY, Petitioner, v.
JAY R. STROH, as Director, etc., Respondent.

## COUNSEL

Rogers, Joseph, O'Donnell & Quinn, Renee D. Wasserman, Sean M. SeLegue, Karen A. Getman and James Robert Maxwell for Petitioner.

Hinman & Carmichael, John A. Hinman, Richard D. Warren; and Lynne J. Omlie for Distilled Spirits Council of the United States, Inc., as Amicus Curiae on behalf of Petitioner.

Bailey & Ross, Bruce R. Bailey, Richard C. Herman and Jigna P. Patel for Promotion Marketing Association, Inc., as Amicus Curiae on behalf of Petitioner.

Pillsbury, Madison & Sutro, Pillsbury Winthrop, James M. Seff, Kevin M. Fong and J. Daniel Davis for Anheuser-Busch, Incorporated as Amicus Curiae on behalf of Petitioner.

Hinman & Carmichael, John A. Hinman, Richard D. Warren and Beth Aboulafia for Seagram Chateau & Estate Wines Company as Amicus Curiae on behalf of Petitioner.

Farella, Braun & Martel, Douglas R. Young, Richard Van Duzer and Stephanie P. Skaff for Miller Brewing Company as Amicus Curiae on behalf of Petitioner.

Rogers, Joseph, O'Donnell & Quinn, Renee D. Wasserman, Karen A. Getman and Sean M. SeLegue for Beringer Wine Estates Company as Amicus Curiae on behalf of Petitioner.

Bill Lockyer, Attorney General, Martin H. Milas, Assistant Attorney General, Marybelle D. Archibald, Jeanne Wolfe and Tracy S. Hendrickson, Deputy Attorneys General, for Respondent.

---

**OPINION**

**SCOTLAND, P. J.**—By petition for a writ of mandate, the Coors Brewing Company (Coors) seeks to invalidate an amended regulation of the Department of Alcoholic Beverage Control (the Department) that effectively will prohibit alcoholic beverage licensees from continuing to conduct promotional contests in which cash prizes are given to consumers.[1] Coors contends that the regulation (Cal. Code Regs., tit. 4, § 106), which we will refer to as rule 106, must be struck down because it exceeds the scope of its enabling statute, Business and Professions Code section 25600. (Further section references are to the Business and Professions Code unless otherwise specified.)

At issue in this case is Coors's use of sweepstakes to promote its products. A sweepstakes is a contest in which a "prize is or may be awarded to the winner." (Webster's 3d New Internat. Dict. (1986) p. 2309.) In Coors's sweepstakes, consumers who purchase certain products, or who send in self-addressed stamped envelopes without buying the products, receive entry cards listing a toll-free 800 number. By calling the number, the consumers may enter the sweepstakes and, by following the instructions, are notified whether they have won a cash prize. Winners are selected randomly by computer, and the number of prizes is set forth in the rules of the promotion.

Coors claims rule 106 is invalid because it will prohibit cash prize sweepstakes which, in Coors's view, do not run afoul of section 25600. We issued an alternative writ of mandate and stayed the enforcement of rule 106 pending further order of this court.

We now conclude rule 106 is valid because it does not operate more broadly than section 25600, which prohibits a licensee, such as Coors, from giving any premium, gift, or free goods in connection with the sale or distribution of an alcoholic beverage, except when the premiums, gifts, or free goods are of inconsequential value. As we shall explain, a cash prize is a "premium" within the meaning of section 25600. Thus, rule 106's

---

[1] We have granted Coors's motion for judicial notice of the exhibits submitted in support of its petition for a writ of mandate. We now grant the Department's request for judicial notice of the exhibits attached to its answer to the petition.

prohibition against cash prize sweepstakes in connection with the sale or distribution of an alcoholic beverage is consistent with the enabling statute.

Accordingly, we shall deny the relief requested by Coors.

### BACKGROUND

Coors is a brewer of beer with a certificate issued by the Department that permits it to distribute and sell its beer products within the state. Coors promotes its products by various means, including media advertising, point-of-sale displays, and consumer-oriented promotions. As part of its promotional efforts, Coors has in the past and will in the future, if permitted, conduct sweepstakes.

For many years, the Department authorized alcoholic beverage suppliers to conduct sweepstakes, provided certain criteria were met. Those criteria included: no purchase of an alcoholic beverage could be required to enter; alcoholic beverages could not be given as prizes; entry blanks had to be made available through the print media and not exclusively through licensed premises; the contest had to be nationwide or at least marketwide; and retail licensees could not be given prizes.

Effective January 8, 1999, the Department promulgated, and the Office of Administrative Law approved, an amended version of rule 106.

As relevant here, subdivision (a) of rule 106 now provides: "Free Goods. No licensee shall, directly or indirectly, give any premium, gift, free goods, or other thing of value in connection with the sale, distribution, or sale and distribution of alcoholic beverages, and no retailer shall, directly or indirectly, receive any premium, gift, free goods or other thing of value from a supplier of alcoholic beverages, except as authorized by this rule or the Alcoholic Beverage Control Act."

Subdivision (b)(8) of rule 106 now provides: " 'Sale', 'Sales', 'Distribution' or 'Sales and Distribution' as used in this rule mean the total business of merchandising alcoholic beverages, including the solicitation of customers and the various methods and procedures used in advertising and promoting the sale of alcoholic beverages, as well as the actual transfer of title of alcoholic beverages."

And, following subdivisions that identify acceptable merchandising and contest activities, subdivision (j) was added to rule 106 to provide: "Limitations. [¶] Nothing in this Rule shall be construed to authorize the giving of

any premium, gift or goods of any sort, whether by way of sweepstakes, drawings, prizes, cross-merchandising promotions with a non-alcoholic beverage product or products or any other method if the value of the premium, gift or goods given to an individual exceeds $0.25 with respect to beer, $1.00 with respect to wine or $5.00 with respect to distilled spirits."

The Department notified industry members, including Coors, of the amendments to rule 106, and advised them that after April 1, 1999, any promotional activity in violation of the rule would be subject to enforcement action.

Pursuant to section 23090.5, Coors petitioned for a writ of mandate to challenge the validity of the amendments to rule 106.[2]

## DISCUSSION

### I

The Twenty-first Amendment to the United States Constitution, which repealed the Eighteenth Amendment (Prohibition), reserves to the states an unusual degree of authority over the transportation and importation of alcoholic beverages. (See *Rice v. Alcoholic Bev. etc. Appeals Bd.* (1978) 21 Cal.3d 431, 447-448 [146 Cal.Rptr. 585, 579 P.2d 476, 96 A.L.R.3d 613].) Among other things, article XX, section 22 of our state's Constitution, establishes the Department and grants it authority over the manufacture, importation, and sale of alcoholic beverages, in accordance with laws enacted by the Legislature.

The Department has broad authority to "make and prescribe those reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the California Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by this division, not inconsistent with any statute of this state . . . ." (§ 25750, subd. (a).)

■ While the Department's rulemaking authority is broad, it is not unlimited. The Department cannot legislate. (*Blatz Brewing Co. v. Collins*

[2]Section 23090.5 provides: "No court of this state, except the Supreme Court and the courts of appeal to the extent specified in this article, shall have jurisdiction to review, affirm, reverse, correct, or annul any order, rule, or decision of the department or to suspend, stay, or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the department in the performance of its duties, but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case."

(1945) 69 Cal.App.2d 639, 643 [160 P.2d 37].) The Department's exercise of its rulemaking authority must be consistent with a delegation of authority from the Legislature. (*Id.* at p. 645.) Consequently, the Department cannot promulgate a valid rule that is inconsistent with any statute of this state. (*Harris v. Alcoholic Bev. etc. Appeals Bd.* (1965) 235 Cal.App.2d 479, 482 [45 Cal.Rptr. 450].) Any rule that abridges, enlarges, or exceeds the power delegated to the Department by the Legislature is void. (*Samson Market Co. v. Kirby* (1968) 261 Cal.App.2d 577, 584 [68 Cal.Rptr. 130].)

■  The statute that governs this action, section 25600, set forth in full in the margin, provides that "[n]o licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage . . . ."[3] This prohibition is reiterated with respect to beer in subdivision (b) of section 25600, which provides that "[n]o rule of the department may permit a licensee to give any premium, gift, or free goods of greater than inconsequential value in connection with the sale or distribution of beer." Inconsequential value is defined as having a cost of 25 cents or less per unit.

---

[3]Section 25600 provides in full: "(a)(1) No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage, except as provided by rules that shall be adopted by the department to implement this section or as authorized by this division. [¶] (2)(A) Notwithstanding paragraph (1), for purposes of this section, a refund to, or exchange of products for, a dissatisfied consumer by a licensee authorized to sell to consumers shall not be deemed a premium, gift, or free goods given in connection with the sale or distribution of an alcoholic beverage. [¶] (B) A winegrower may advertise or otherwise offer consumers a guarantee of product satisfaction only in newsletters or other publications of the winegrower or at the winegrower's premises. A winegrower may refund to a dissatisfied consumer the entire purchase price of wine produced by that winegrower and sold to that consumer, regardless of where the wine was purchased. [¶] (b) No rule of the department may permit a licensee to give any premium, gift, or free goods of greater than inconsequential value in connection with the sale or distribution of beer. With respect to beer, premiums, gifts, or free goods, including advertising specialties that have no significant utilitarian value other than advertising, shall be deemed to have greater than inconsequential value if they cost more than twenty-five cents ($0.25) per unit, or cost more than fifteen dollars ($15) in the aggregate for all those items given by a single supplier to a single retail premises per calendar year. [¶] (c) With respect to distilled spirits and wines, a licensee may furnish, give, rent, loan, or sell advertising specialties to a retailer, provided those items bear conspicuous advertising required of a sign and the total value of all retailer advertising specialties furnished by a supplier, directly or indirectly, to a retailer do not exceed fifty dollars ($50) per brand in any one calendar year per retail premises. The value of a retailer advertising specialty is the actual cost of that item to the supplier who initially purchased it, excluding transportation and installation costs. The furnishing or giving of any retailer advertising specialty shall not be conditioned upon the purchase of the supplier's product. Retail advertising specialties given or furnished free of charge may not be sold by the retail licensee. No rule of the department may impose a dollar limit for consumer advertising specialties furnished by a distilled spirits supplier to a retailer or to the general public of less than five dollars ($5) per unit original cost to the supplier who purchased it."

The statutory prohibition can be illuminated by its relatively recent history.[4] Until 1983, the prohibition of this section applied to premiums, gifts and free goods in connection with the "sale" of alcoholic beverages. (Stats. 1953, ch. 152, § 1, p. 1020.) At that time, the Department's rule broadly defined "sale" to include the total business of merchandising, including various methods and procedures used in advertising. (*Miller Brewing Co. v. Department of Alcoholic Beverage Control* (1988) 204 Cal.App.3d 5, 14 [250 Cal.Rptr. 845].) Upon review, the Department concluded that its rule exceeded the scope of the statute; thus, the Department commenced proceedings for its repeal. (*Ibid.*) The Legislature then enacted urgency legislation to add "or distribution" to the statutory prohibition. (Stats. 1983, ch. 215, § 2, p. 683.) The legislatively declared urgency was the Department's proposed repeal of its rule and the legislative need to act immediately to give the rule statutory support. (Stats. 1983, ch. 215, § 3, pp. 683-684.)

In *Miller Brewing Co. v. Department of Alcoholic Beverage Control, supra*, 204 Cal.App.3d at page 15, this court concluded that, in view of its legislative history, "distribution" as used in section 25600, must be afforded the broad definition utilized by the Department. We found that Miller Brewing Company's promotional efforts, which included nonalcoholic beverage merchandise giveaways, violated the rule and the statute. (204 Cal.App.3d at p. 15.)

II

In this case, Coors focuses on the statutory prohibition against "any premium, gift or free goods." Coors argues that its sweepstakes prizes are always cash awards and thus are not "free goods." It asserts that the act of entering the sweepstakes and becoming a random winner is sufficient consideration to preclude defining the sweepstakes prize as a "gift." (See Civ. Code, § 1146.) And, according to Coors, the fact that a sweepstakes prize is not a "premium" is established by the decision in *Gonzales & Co. v. Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172 [198 Cal.Rptr. 479].

In *Gonzales & Co. v. Department of Alcoholic Bev. Control*, this court was called upon to determine whether a winegrower was prohibited from offering a rebate to retail purchasers. (*Gonzales & Co., supra*, 151 Cal.App.3d at

---

[4]Section 25600 has statutory roots dating back more than 60 years. The Alcoholic Beverage Control Act was adopted in 1935 as an uncodified act. (Stats. 1935, ch. 330, § 1, p. 1123.) The original version of section 25600 was added to the uncodified act, as section 55.7, in 1937. (Stats. 1937, ch. 758, § 89, p. 2174.) In 1953, when the Alcoholic Beverage Control Act was added to the Business and Professions Code, the provision became section 25600 of that code. (Stats. 1953, ch. 152, § 1, p. 1020.)

pp. 174-175.) We observed that the word "premium" may be defined in various ways, some of which would include and some of which would exclude a "rebate." (*Id.* at p. 176.) Discovering that for years the Legislature had distinguished between "rebates" and "premiums" in the Alcoholic Beverage Control Act, we concluded a rebate is not a prohibited premium within the meaning of section 25600. (151 Cal.App.3d at pp. 177-179.)

Coors relies upon the comment in *Gonzales & Co. v. Department of Alcoholic Bev. Control*, that a premium may be something given without charge or at less than the usual price *with the purchase of a product or service.* (*Gonzales & Co., supra,* 151 Cal.App.3d at pp. 176, 179.) Because its sweepstakes prizes are not conditioned upon the purchase of a product, Coors argues that the sweepstakes prizes are not premiums.

But the opinion in *Gonzales & Co. v. Department of Alcoholic Bev. Control, supra,* 151 Cal.App.3d 172 did not undertake to advance a comprehensive definition of the word "premium" as used in section 25600. We discussed possible definitions of the word only insofar as it was necessary to demonstrate that the word was ambiguous with respect to whether it would include a rebate. Our observations, such as the suggestion that a premium may be something extra given for the purchase of a product, are not definitive for our purposes here.

Coors's argument that the prohibition upon giveaways set forth in section 25600 does not apply unless a purchase is involved is rebutted by the 1983 amendment to that section and this court's decision in *Miller Brewing Co. v. Department of Alcoholic Beverage Control, supra,* 204 Cal.App.3d at page 15. The prohibition applies to the total business of merchandizing, including advertising and promotional efforts. (*Ibid.*)

Therefore, the question is whether a sweepstakes prize is a "premium, gift or free goods" regardless of whether a purchase is required.

In Webster's Third New International Dictionary (1989) at page 1789, the definition of premium includes "a reward or recompense for a particular act: a prize to be won for superior performance or successful competition: AWARD." In volume 8 of the Oxford English Dictionary (1933) page 1281, premium is defined as "[a] reward given for some specific act or as an incentive; a prize."

Legal references agree. In Ballantine's Law Dictionary (3d ed. 1969) page 979, the definition of premium includes "[a] purse, prize, stake or sweepstake; some valuable thing offered by a person for the doing of something by

others, into the strife for which he does not enter." Similarly, in 38 Corpus Juris Secundum (1996) Gaming, section 3, page 99, we find: " 'Premium,' 'prize,' and 'purse' have been defined in the same terms as meaning ordinarily some valuable thing offered to the winner of a contest, for which the person offering it does not compete, and stands no chance of gaining back the thing offered or any part thereof, some valuable thing, offered by a person for the doing of something by others, into the strife for which he does not enter." (Fns. omitted.)

The concept of a "premium" as reflected in these definitions was applied by California's Supreme Court in *Hankins v. Ottinger* (1896) 115 Cal. 454 [47 P. 254]. There, the parties, both owning horses that were entered in certain stake races, agreed to pool "all premiums and stake moneys" awarded to either and then to divide the sum equally. (*Id.* at p. 456.) The defendant reneged and contended the agreement was an unenforceable wagering venture. (*Ibid.*) In rejecting the defendant's contention, the court noted: " 'In a premium or reward there is but one party until the act or thing or purpose for which it is offered has been accomplished. A premium is a reward or recompense for some act done; a wager is a stake upon an uncertain event. In a premium it is known who is to give before the event; in a wager it is not known till after the event. The two need not be confounded.' " (*Id.* at p. 457.) The court added: " 'A purse, prize, or premium is ordinarily some valuable thing offered by a person for the doing of something by others, into the strife for which he does not enter. He has not a chance of gaining the thing offered; and, if he abide by his offer, that he must lose it, and give it over to some of those contending for it, is reasonably certain.' " (*Id.* at p. 458.)

This meaning of "premium" was reiterated in *Brown v. Board of Police Commrs.* (1943) 58 Cal.App.2d 473 [136 P.2d 617]: "In the case of a premium it is known before the event who is to give, there being until the outcome but one party to the transaction; in a wager, there must be two parties, whose identity is established before the outcome of the uncertain event, and these are the parties who must either win or lose. [Citation.] 'A premium is a reward or recompense for some act done . . . .' [Citation.]" (*Id.* at p. 477.)

More recent decisional authorities that equate "premium" with "purse" or "prize" include *Western Telcon, Inc. v. California State Lottery* (1996) 13 Cal.4th 475, 485 [53 Cal.Rptr.2d 812, 917 P.2d 651], and *Bell Gardens Bicycle Club v. Department of Justice* (1995) 36 Cal.App.4th 717, 747 [42 Cal.Rptr.2d 730].

Within the definitional guidance of these authorities, the word "premium" would certainly be apt to describe the prize or prizes to be awarded in a

sweepstakes. Moreover, attribution of such a meaning to the word "premium" as used in section 25600 would be consistent with the principle of statutory construction known as *noscitur a sociis*, i.e., it is known from its associates. (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160 [278 Cal.Rptr. 614, 805 P.2d 873].) Pursuant to that principle, we may, unless circumstances dictate otherwise, determine the meaning of a particular statutory term by reference to the characteristics that it shares with other things of the same kind, class, or nature which are cataloged with it in the enactment. (*Harris v. Capital Growth Investors XIV, supra*, 52 Cal.3d at pp. 1159-1160.)

In section 25600, the Legislature broadly proclaimed that "[n]o licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage." It is appropriate to consider the meaning of the word "premium," as used in this statute, by reference to its statutory companions, "gift" and "free goods." In light of the definitional characteristics of "gift" and "free goods" (see *Gonzales & Co. v. Department of Alcoholic Bev. Control, supra*, 151 Cal.App.3d at pp. 175-176), it becomes apparent that "premium" is used in a manner that includes sweepstakes prizes, which is a meaning well within its definitional scope. Indeed, it would be anomalous to conclude that the Legislature intended to preclude licensees from giving away such things as concert tickets and jackets (*Miller Brewing Co. v. Department of Alcoholic Beverage Control, supra*, 204 Cal.App.3d at p. 8), but that monetary prizes are acceptable.[5]

For all the reasons stated above, we conclude that rule 106, in its amended form, is consistent with its enabling legislation, section 25600.

### III

In view of the arguments advanced by Coors and supported by amici curiae, a few further points warrant brief discussion.

Coors points to section 17539.1 et seq., as an aid in describing the nature of a sweepstakes contest. Those provisions proscribe certain unfair practices in the operation of contests and describe certain requisites to which contests conducted in this state must conform. However, section 17539.3, subdivision (c) provides: "Nothing in Sections 17539 to 17539.2, inclusive, shall be construed to permit any contest or any series of contests or any act or

---

[5]We have no occasion here to determine the outer limits of the meaning of "premium" as used in Business and Professions Code section 25600. It is enough to conclude, as we do, that the word encompasses the prizes to be awarded in this sweepstakes.

omission in connection therewith which is prohibited by any other provision of law." Accordingly, the unfair practices provisions of the Business and Professions Code do not override the provisions of the Alcoholic Beverage Control Act to the extent that act forbids a licensee from conducting a sweepstakes.

■■ Coors and the various amici curiae make much of the fact that the Department has authorized sweepstakes in the past. The point is relevant but not controlling. First, there is no issue here of retroactivity, or of vested rights, or of other concepts that might limit the state's power to prohibit certain business activities. The Department gave licensees ample notice of its intent to promulgate an amended regulation that would prohibit sweepstakes. When the regulation became effective, the Department gave licensees notice of its adoption and a reasonable time to conclude contests which had been initiated in reliance on the Department's former position. The stay of enforcement that we issued in this matter has given licensees further time to conclude previously commenced contests. Accordingly, we are not concerned here with whether licensees should be allowed to conclude previously commenced contests. The fact that sweepstakes were permitted in the past does not confer upon alcoholic beverage licensees a right to conduct sweepstakes in the future free of the state's prohibitory power. (*Castleman v. Scudder* (1947) 81 Cal.App.2d 737, 740 [185 P.2d 35]; *Rosenblatt v. Cal. St. Bd. of Pharmacy* (1945) 69 Cal.App.2d 69, 73 [158 P.2d 199].)

Coors asserts that, because the Department has retreated from its long-standing view of the statute, its new interpretation of section 25600 is not entitled to judicial deference. (Citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 13 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [an agency's " 'vacillating position . . . is entitled to no deference' "].) This is of no avail to Coors. Because we have reached our conclusion independently of the Department's view, we have no occasion to rely upon the usual rule of construction that accords deference to the views of an administrative agency.

Coors and amici curiae also assert that the Legislature tacitly agreed with the Department's prior position by failing to take action to prohibit sweepstakes during the times sweepstakes were permitted by the Department. But legislative acquiescence is less than clear in view of the statutory history we have discussed above. (See *Miller Brewing Co. v. Department of Alcoholic Beverage Control, supra*, 204 Cal.App.3d at p. 15.) In any event, the final responsibility for interpreting the law is the duty of the court, and an erroneous administrative interpretation of a statute is not controlling even when the statute has been reenacted without change. (*People v. Navarro*

(1972) 7 Cal.3d 248, 274 [102 Cal.Rptr. 137, 497 P.2d 481]; *Estate of Elsman* (1977) 74 Cal.App.3d 721, 734 [141 Cal.Rptr. 657].)

Last, Coors and the amici curiae offer various policy arguments in support of sweepstakes. We are told that the alcoholic beverage industry is highly competitive and sweepstakes are an important marketing tool; that sweepstakes tend to influence market share among suppliers but do not increase the overall consumption of alcoholic beverages; that sweepstakes must be conducted fairly and above board because they are regulated by the unfair practice provisions of the Business and Professions Code and by Penal Code provisions governing lotteries; and that, if rule 106 is valid, California will be the only state prohibiting sweepstakes, and California residents alone will be barred from participating in the contests. But the Legislature is the proper forum for these policy arguments. That body has the authority to allow alcoholic beverage licensees to conduct sweepstakes and other contests should the Legislature determine that it is in the public interest to do so. (*Gonzales & Co. v. Department of Alcoholic Bev. Control, supra*, 151 Cal.App.3d at p. 179.) As a court, we must defer to the Legislature for resolution of these policy arguments.

## DISPOSITION

The petition for a peremptory writ of mandate is denied. Having served their purposes, the alternative writ and stay are discharged with the finality of this opinion. The parties shall bear their own costs. (Cal. Rules of Court, rule 56.4(a).)

Raye, J., and Hull, J., concurred.

Petitioner's petition for review by the Supreme Court was denied April 11, 2001.