[No. C039417. Third Dist. Dec. 27, 2002.]

THE PEOPLE ex rel. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Plaintiff and Appellant, v.
MILLER BREWING COMPANY, Defendant and Respondent.

1190

COUNSEL

Bill Lockyer, Attorney General, Jacob Appelsmith and Stacy Boulware Eurie, Deputy Attorneys General, for Plaintiff and Appellant.

Farella Braun & Martel and Richard Van Duzer for Defendant and Respondent.

OPINION

**SCOTLAND, P. J.**—The Department of Alcoholic Beverage Control (the Department) appeals from the superior court's order denying the Department's request for a preliminary injunction to enjoin Miller Brewing Company (Miller) from giving consumers cash rebates on the purchase of beer when the consumers buy certain nonalcoholic products.

According to the Department, Miller's promotional campaign, which the Department refers to as a "contingent rebate" scheme, violates Business and Professions Code section 25600 (hereafter section 25600) and California Code of Regulations, title 4, section 106 (hereafter rule 106). We disagree.

As we will explain, almost 20 years ago section 25600 was construed by this court to allow cash rebates on the purchase of alcoholic beverages. Since then, the Legislature has amended section 25600 without altering that construction of the statute, thus acquiescing in the court's interpretation of legislative intent. Nothing in the language of section 25600 supports the Department's position that the Legislature's intent to allow direct cash rebates on the purchase of alcoholic beverages does not extend to cash rebates contingent upon the purchase of nonalcoholic products. And, because the provisions of rule 106 cannot exceed the scope of its enabling statute, section 25600, the Department cannot rely on rule 106 to prohibit so-called contingent rebate promotional campaigns.

Accordingly, we shall affirm the judgment, denying the request for a preliminary injunction to stop Miller's rebate campaign.

BACKGROUND

Miller's rebate promotion gives coupons to consumers for $1 or $2 off the purchase of one of Miller's beer products if the consumers purchase specified nonalcoholic products, such as ground beef, pickles, soda, or buns. For

example, one promotion offers $2 off the purchase of Foster's beer, which is distributed by Miller, when the consumer purchases a pound or more of shrimp. Some of the coupons may be redeemed instantly at the time of purchase, while others must be mailed in to obtain the rebate. The Department refers to the promotion as a "contingent rebate" program because the rebate on the purchase of beer is contingent upon the consumer's purchase of a nonalcoholic item.

The Department sought a preliminary and permanent injunction against Miller, alleging that the campaign violates section 25600, which provides in pertinent part: "(a)(1) No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage, except as provided by rules that shall be adopted by the department to implement this section or as authorized by this division. [¶] . . . [¶] (b) No rule of the department may permit a licensee to give any premium, gift, or free goods of greater than inconsequential value in connection with the sale or distribution of beer. With respect to beer, premiums, gifts, or free goods, including advertising specialties that have no significant utilitarian value other than advertising, shall be deemed to have greater than inconsequential value if they cost more than twenty-five cents ($0.25) per unit, or cost more than fifteen dollars ($15) in the aggregate for all those items given by a single supplier to a single retail premises per calendar year."

In the Department's view, the contingent rebates are premiums within the meaning of section 25600, subdivision (a), and thus are prohibited because they exceed the $0.25 limit imposed by subdivision (b) of section 25600. The Department also argues that rule 106 prohibits Miller's cross-merchandising promotion.

Relying on this court's decision in *Gonzales & Co. v. Department of Alcoholic Bev. Control* (1984) 151 Cal.App.3d 172 [198 Cal.Rptr. 479] (hereafter *Gonzales*), the superior court ruled that the cash rebates offered by Miller are not premiums, and therefore are not prohibited by section 25600. The court also held the rebates are not barred by the Department's interpretation of rule 106 because the Department does not have the authority to issue a regulation exceeding the scope of the enabling statute.

DISCUSSION

I

In determining whether to grant a preliminary injunction, the superior court must consider the likelihood that the plaintiff will prevail on the

merits at trial, and weigh the interim harm to the plaintiff if the injunction is denied against the interim harm to the defendant if the injunction is granted. (*Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) Ordinarily, an order denying a preliminary injunction is reviewed under the abuse of discretion standard. (*Ibid.*) However, where as here the factor of the " 'likelihood of prevailing on the merits' " depends upon a question of law or the construction of a statute, rather than upon evidence to be introduced at a subsequent full trial, the standard of review is whether the superior court correctly interpreted and applied the law, which we review de novo. (*Efstratis v. First Northern Bank* (1997) 59 Cal.App.4th 667, 671-672 [69 Cal.Rptr.2d 445]; *Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 513 [21 Cal.Rptr.2d 578].)

■ The Department does not assert that the contingent rebate coupons are gifts or free goods within the meaning of section 25600. Rather, it contends the superior court erred in relying on *Gonzales, supra,* 151 Cal.App.3d 172, for the proposition that, as a matter of law, the contingent rebates offered by Miller are not premiums within the meaning of section 25600.

*Gonzales* addressed whether section 25600 prohibited a winegrower from offering, via newspaper advertisements, a $1 cash rebate to purchasers of certain types of wine. (*Gonzales, supra,* 151 Cal.App.3d at pp. 174-175.) At the time, section 25600 simply provided: "No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale of any alcoholic beverage. Any person violating the provisions of this section is guilty of a misdemeanor." (Stats. 1953, ch. 152, § 1, p. 1020.)

*Gonzales* observed that the rebate was not a "gift" because, in order to receive it, one had to purchase wine. It was not "free goods" because "goods" does not ordinarily mean "money." (*Gonzales, supra,* 151 Cal.App.3d at pp. 175-176.) The parties disputed whether the rebate was a "premium," which term is not defined in section 25600. *Gonzales* acknowledged that the word "premium" may be defined in various ways, some of which would include, and some of which would exclude, a "rebate." (*Gonzales* at p. 176.) For example, if a premium is defined as something given without charge or at less than the usual price with the purchase of a product or a service, then a "rebate arguably falls within the definition of 'premium.' " (*Ibid.*)

After reviewing the statutory history of the Alcoholic Beverage Control Act (the Act), *Gonzales* discovered that the Legislature had distinguished

between "rebates" and "premiums" for many years and had not used these terms interchangeably in section 25600. (*Gonzales, supra,* 151 Cal.App.3d at p. 177-178.) Concluding the Legislature intended the words to have different meanings and did not intend to include a "rebate" as a "premium" for purposes of the statute (*id.* at pp. 177-179), *Gonzales* held that "a rebate of money, in the form of a refund of a portion of the retail price paid for [an alcoholic beverage] . . . does not constitute a 'premium . . .' within the meaning of section 25600 and is therefore not made unlawful by that statute." (*Id.* at p. 179.)

The Department asserts that, when *Gonzales* was decided in 1984, section 25600 did not include "prohibitions regarding the total business of merchandising" alcohol, "there was no concept or definition of inconsequential value," and there was no "statutory bases for the promulgation of rules as currently exists in the Code of Regulations." Thus, according to the Department, *Gonzales* "did not have the benefit or guidance of the complex statutory authority that exists today."

Apparently, the Department believes these statutory changes undermine or affect the basis for the decision in *Gonzales*, but it fails to explain why this is so. That the amended statute now permits the giving of premiums, gifts, and free goods that do not exceed a specifically defined inconsequential value (§ 25600, subd. (b)) does not alter the meaning of these terms. Nor is the meaning affected by the fact that licensees are now precluded from giving such items in connection with the *distribution* of alcohol in addition to the sale of alcohol. (§ 25600, subd. (a).)

The interpretation of "premium" in *Gonzales* was based on the legislative history of section 25600 and the Act, and did not hinge upon (1) the amount of the rebate in that case, (2) the fact the statute did not address "merchandising," or (3) the Department's supposed lack of rule-making authority when *Gonzales* was decided.[1] The Department has failed to demonstrate that the later amendments to which it alludes have any bearing on the interpretation of the statutory term "premium."

The statutory changes pointed out by the Department are noteworthy, however, in that they demonstrate the Legislature has amended section

---

[1] Although the Department claims that it did not then have the authority to promulgate rules, this assertion is belied by Business and Professions Code former section 25750, which authorized the Department to "make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the [California] Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by [the Act], not inconsistent with any of the provisions of any statute of this State . . . ." (Stats. 1953, ch. 152, § 1, p. 1025; see also *Miller Brewing Co. v. Department of Alcoholic Beverage Control* (1988) 204 Cal.App.3d 5, 10 [250 Cal.Rptr. 845].)

25600 several times following the *Gonzales* decision, yet the Legislature has not altered the statute to provide that rebates on the purchase of alcohol are intended to fall within the prohibition against the giving of premiums in connection with the sale or distribution of alcohol. (See Stats. 1985, ch. 803, § 1, p. 2586; Stats. 1988, ch. 1080, § 1, pp. 3493-3494; Stats. 1994, ch. 392, § 1, pp. 2245-2246; Stats. 1995, ch. 91, § 15, pp. 258-259.) Section 25600 still forbids the direct or indirect giving of "any premium, gift, or free goods" in connection with the sale or distribution of alcohol, which are the same items that former section 25600 prohibited licensees from giving in connection with the sale of alcohol at the time *Gonzales* was decided.

■ When a statute has been construed judicially and the Legislature thereafter amends that very portion of the statute using substantially similar language and without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of the statute unless a contrary intent appears. (*Estate of Griswold* (2001) 25 Cal.4th 904, 915-916 [108 Cal.Rptr.2d 165, 24 P.3d 1191]; *Townzen v. County of El Dorado* (1998) 64 Cal.App.4th 1350, 1357-1358 [76 Cal.Rptr.2d 281].) ■ No such contrary intent appears in the present case.

The Department contends that *Gonzales* does not govern in this case because *Gonzales* held only that *direct* rebates are not premiums and did not address *indirect* rebates, which the Department maintains must be treated differently. It points out the decision in *Gonzales* noted that giving "something extra" for the purchase of a product could be construed as a premium. (*Gonzales, supra,* 151 Cal.App.3d at p. 179.) According to the Department, Miller's rebates on the purchase of alcohol are premiums because they are "something extra" given for the purchase of a nonalcoholic product. We disagree.

Although *Gonzales* involved a direct rebate, its holding that rebates on the purchase of alcohol are not prohibited premiums was not premised on this fact. Rather, it was based on the legislative history of the Act, which demonstrated the Legislature perceived a difference between a rebate and a premium, and did not intend to include rebates in the statutory prohibition against the giving of premiums in connection with the sale of alcohol. While the mechanism for obtaining a rebate may be different under Miller's promotional program than the promotion in *Gonzales*—the consumer must first purchase a nonalcoholic product to obtain a rebate on the purchase of Miller beer—this distinction is not meaningful. The end result is the same, a reduction in the purchase price of the alcoholic beverage.

The Department proffers no cogent reason why a rebate on the purchase of alcohol that is contingent on the purchase of a nonalcoholic product should be treated differently than a direct rebate. And nothing in the language of section 25600 makes such a distinction. Furthermore, the Department has failed to show that interpreting the term "premium" not to include the type of indirect rebates offered by Miller is more likely to contravene the purpose of the Act, of which section 25600 is a part, than the exclusion of direct rebates from the statute's prohibition.

The purpose of the Act is to promote temperance in the use and consumption of alcoholic beverages (Bus. & Prof. Code, § 23001), a purpose that is accomplished, in part, by the limitations set forth in section 25600. The typical scenario prohibited by section 25600 is one where an enticement, such as a gift, free goods, or "something extra," is given in exchange for the purchase of alcohol because this either (1) encourages a person who does not ordinarily imbibe to purchase and drink alcohol in order to obtain the "enticement," or (2) encourages a person who already drinks alcohol to purchase and imbibe more than usual to obtain more free goods or gifts.

Despite its concern with promoting temperance, the Legislature has not prohibited cash rebates on the purchase of alcohol, even though such rebates might be viewed as promoting and encouraging increased purchases of alcohol by giving the consumer a price discount. Given that the Legislature has allowed direct rebates, it makes no sense to interpret 25600 as prohibiting the "contingent" rebates offered by Miller. Miller's rebates—which include the added requirement of purchasing a nonalcoholic product in order to obtain a rebate on the purchase of beer—are no more likely, and may even be less likely, to encourage intemperance than direct rebates on the purchase of beer. Rather than simply having to purchase beer to receive a rebate, consumers also must expend an additional amount of money on a food item to achieve the same benefit provided by a direct rebate.

Thus, the primary difference between the so-called "contingent rebate" in this case and the so-called "direct rebate" in *Gonzales* is that Miller's contingent rebate program encourages consumers to purchase the specified nonalcoholic food items in order to obtain a rebate on their purchase of beer. But encouraging the purchase of shrimp, ground beef, or soda does not contravene the public policy underlying section 25600.

As explained in *Gonzales*, the Legislature did not intend to prohibit cash rebates on the purchase price of alcoholic beverages. Because there is no sound reason for distinguishing between direct rebates and the kind of

contingent rebates offered by Miller, we conclude that Miller's contingent rebates are not prohibited premiums within the meaning of section 25600.

II

The Department also contends that Miller's contingent rebate program is prohibited by rule 106. According to the Department, rule 106 governs the present case because (1) it was promulgated after *Gonzales*, and (2) rule 106 was held to be valid in *Coors Brewing Co. v. Stroh* (2001) 86 Cal.App.4th 768 [103 Cal.Rptr.2d 570] (hereafter *Coors*).

As relevant here, rule 106 provides: "(a) . . . No licensee shall, directly or indirectly, give any premium, gift, free goods, or other thing of value in connection with the sale, distribution, or sale and distribution of alcoholic beverages, and no retailer shall, directly or indirectly, receive any premium, gift, free goods or other thing of value from a supplier of alcoholic beverages, except as authorized by this rule or the Alcoholic Beverage Control Act. [¶] . . . [¶] (j) . . . [¶] Nothing in this Rule shall be construed to authorize the giving of any premium, gift or goods of any sort, whether by way of sweepstakes, drawings, prizes, cross-merchandising promotions with a non-alcoholic beverage product or products or any other method if the value of the premium, gift or goods given to an individual exceeds $0.25 with respect to beer, $1.00 with respect to wine or $5.00 with respect to distilled spirits."

Before addressing the Department's claim that rule 106 prohibits the contingent rebate program, it is necessary to clear up the Department's confusion regarding its rulemaking authority and the holding in *Coors*.

As discussed previously, *Gonzales* construed the term "premium" in section 25600 not to include rebates on purchases of alcoholic beverages. Thereafter, the Legislature did not amend section 25600 to clarify that, contrary to the holding in *Gonzales*, it intended to prohibit such rebates. Thus, as used in section 25600, the term "premium" does not encompass rebates on the purchase of alcohol.

The Department cannot enlarge the scope of the statute by simply promulgating a rule purporting to define the term "premium" differently. This is because its rulemaking authority does not encompass the ability to legislate. (*Coors, supra,* 86 Cal.App.4th at p. 773.) Rather, the Department's exercise of its authority must be consistent with the Legislature's delegation of

authority, and any rule or administrative action that enlarges or exceeds the power delegated by the Legislature is void. (*Id.* at pp. 773-774; *Miller Brewing Co. v. Department of Alcoholic Beverage Control, supra,* 204 Cal.App.3d at pp. 10-11.)

Here, the statute provides that premiums are invalid except to the extent permitted by the Department's rules, and that with respect to beer, the value of a premium may not exceed $0.25. (§ 25600, subds. (a), (b).) In other words, pursuant to section 25600, the Department is authorized to make rules permitting inconsequential premiums. But nothing in the statute gives the Department the authority to expand the definition of the term "premium" beyond that intended by the Legislature. To the extent the Department construes rule 106 to provide a more expansive definition of the term, its construction is invalid.

The Department also views *Coors, supra,* 86 Cal.App.4th 768, as holding that rule 106 is valid in its entirety for all purposes. Apparently, the Department believes this means it may enforce its interpretation of the rule. This is incorrect.

In *Coors,* a brewery sought to invalidate rule 106, which prohibits the use of sweepstakes to award premiums exceeding $0.25 in connection with the sale or distribution of beer. The brewery alleged that cash prizes are not premiums, and therefore rule 106 was invalid because it exceeded the scope of the Department's rulemaking authority. (*Coors, supra,* 86 Cal.App.4th at p. 771.) Thus, the issue in *Coors* was whether a cash sweepstakes winning is a premium within the meaning of section 25600. (*Coors,* at p. 776.)

*Coors* held the term "premium" in section 25600 encompasses the prizes awarded in a sweepstakes, and therefore rule 106, which prohibits premiums given by way of sweepstakes, is consistent with its enabling legislation. (*Coors, supra,* 86 Cal.App.4th at pp. 776-778.) *Coors* had no occasion to consider the outer limits of the meaning of "premium" as used in section 25600, and asserted that it was sufficient to conclude that the section encompassed prizes to be awarded in sweepstakes. (*Coors,* at p. 778, fn. 5.)

The holding in *Coors* that rule 106 is consistent with its enabling legislation is limited by the context of the issue presented in that case. Because it did not address whether the Department's interpretation of rule 106 with respect to contingent rebates was valid, *Coors* is of no assistance to the Department. ■ "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an

opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; accord, *People v. Albritton* (1998) 67 Cal.App.4th 647, 655-656 [79 Cal.Rptr.2d 169].)

■ A more fundamental problem with the Department's reliance on rule 106 is that the Department does not provide any analysis explaining how the rule changes the outcome in this case. It does not point to any portion of the rule that alters the determination that a premium does not include a cash rebate on the purchase of alcohol, even if the rebate is contingent upon the purchase of a nonalcoholic product. ■ It is an established rule of appellate procedure that an appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived. (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [33 Cal.Rptr.2d 13]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [21 Cal.Rptr.2d 834]; *In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83].)

■ Apparently, the Department wishes to incorporate its argument in the trial court, intimating that Miller's cash rebate program violates rule 106 because it is a cross-merchandising promotion with nonalcoholic beverages. ■ However, an appellant may not simply incorporate by reference arguments made in papers filed in the trial court rather than brief the arguments on appeal. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [4 Cal.Rptr.2d 897].) Such arguments are not considered on appeal. (*Ibid.*)

■ In any event, the Department's reliance on rule 106 is misplaced. Subdivision (j) of rule 106 simply provides that Miller may not circumvent the prohibition against giving any *premium* worth more than $0.25 by way of cross-merchandising promotions with a nonalcoholic beverage product. If the contingent rebates Miller offers through its cross-merchandising promotion are not premiums, they are not within the prohibition of rule 106. As we explained previously, the contingent rebates are not premiums. Therefore, rule 106 has no application.

For the reasons stated above, the superior court correctly refused to issue the requested preliminary injunction.

## DISPOSITION

The judgment is affirmed.

Callahan, J., and Kolkey, J., concurred.