131 Cal.Rptr.2d 233 (2003)
106 Cal.App.4th 869
In re Michael Lee JENNINGS, On Habeas Corpus.
No. C041479.
Court of Appeal, Third District.
February 28, 2003.
Review Granted May 21, 2003.
*234 Rothschild, Wishek & Sands, Kelly Lynn Babineau, and M. Bradley Wishek, Sacramento, for Petitioner.
Bill Lockyer, Attorney General, Robert R. Anderson, Jo Graves, Assistant Attorneys General, Carlos A. Martinez, Mathew Chan, Deputy Attorneys General, Robert A. Ryan, Jr., County Counsel and James G. Wright, Deputy County Counsel for Respondent.
SIMS, Acting P.J.
Business and Professions Code section 25658, subdivision (c) (section 25658(c))[1] makes it a misdemeanor offense to sell, furnish, give, or cause to be sold, furnished or given away any alcoholic beverage to any person under the age of 21 years who thereafter proximately causes great bodily injury or death to himself, herself, or any other person. In this case, we hold that, in order to violate this statute, the person furnishing the alcohol need not know that the person to whom it is furnished is under the age of 21 years.

PROCEDURAL HISTORY
On September 7, 2000, a first amended misdemeanor complaint was filed against petitioner Michael Lee Jennings (defendant) charging him with violating section 25658(c) by purchasing alcoholic beverages for minors who thereafter consumed the alcohol and proximately caused great bodily injury or death to themselves and others. Defendant entered a not guilty plea and the case was assigned for jury trial.
In the trial court, the People submitted a motion in limine seeking to exclude any evidence by defendant regarding his ignorance of the true age of Charles Turpin, the minor for whom defendant allegedly purchased the alcohol, who consumed the alcohol, and who thereafter while driving from defendant's house broadsided another car, seriously injuring himself and two other people. The prosecution contended defendant's knowledge of the minor's age was irrelevant to a violation of section 25658(c).
Defendant filed a trial brief contending, inter alia, that knowledge is a necessary element of the offense. The defense made an offer of proof that it intended to adduce evidence that defendant believed Turpin to *235 be at least 21 years old based on the following:
Just a few weeks prior to this incident, defendant and several others from his work, including Turpin, decided to go for a beer after work. They all went to a local convenience store. They were standing in the parking lot, drinking some beer, when a police officer pulled up. The officer told them they would have to leave. The officer questioned Turpin as to his age and Turpin told the officer he was 22. In addition, defendant offered to show that his lack of knowledge of Turpin's age was supported by the employee records at Armor Steel, the company where they both worked. Specifically, Turpin's job application does not have a place for a person's date of birth. There was no photocopy of Turpin's license in the employment file. Moreover, defendant did not possess Turpin's work records and would have no reason to inquire into his age.
The trial court granted the prosecution's in limine motion, ruling that section 25658(c) is a strict liability regulatory offense. The trial court ruled that no evidence of knowledge or mistake of fact could be admitted into trial.
On the next day for trial, defendant decided to submit the case to court trial on the basis of the police report, preserving his right to appeal the trial court's ruling on the prosecution's in limine motion. The police report provides in pertinent part as follows:
"On 05-30-00 while at work for Armor Steel Company in Rio Linda Ca. Suspect Michael Jennings, a supervisor for this company had a meeting with Witnesses and victims Charles Turpin, Curtis Fosnaugh, Daniel Smith and Donald Szalay. After the meeting, all four were invited over to Jennings' house, to see his new house and watch a video tape of some new machinery that the company was getting. It was agreed by all that they would go to Jennings' house, have some beers and watch the video. Enroute to Jennings' house, Szalay stopped at a 7-11 convenience store and bought a twelve pack of 'Natural Lite'. The four then went over to Jennings' house. While at Jennings' house, suspect asked his wife Danielle to go to the store and get more beer. Jennings' wife Danielle returned to the house with a twelve pack of Corona Beer. The five men sat in the garage and drank the beer. Fosnaugh and Smith had a couple of beers each, but knew they had to go home and stopped drinking early. Turpin, Szalay and Jennings kept drinking. Fosnaugh and Smith estimate that Turpin drank between 5 and 7 beers while in the garage.
"They all went into the house where they drank more beer and watched the video. They also discussed the hazards of drunk driving and Jennings told the boys not to get caught and that he had been arrested before and it was not a good experience. As the time approached 6:00 P.M. they decided that it was time to go home. Jennings warned Fosnaugh and Turpin to be careful knowing that they had been drinking. He told them all that he would see them all at work the next day.
"Szalay left first and Fosnaugh, Smith and Turpin followed about five minutes later. Fosnaugh left by himself driving his white Ford pick-up, Turpin and Smith followed with Turpin driving his blue VW Beetle. While the three drove toward home in Vacaville, Turpin drove on the wrong side of the roadway, passed on the left when it was not safe and failed to stop for a stop sign. Turpin broadsided Fosnaugh's vehicle resulting in major injuries to all three. All three were transported and admitted to Mercy San Juan Hospital. At the time of this investigation, Smith was in the Intensive Care unit, with a *236 broken leg, a broken arm, and head trauma.
"Preliminary Alcohol Screening Test result of Turpin's blood alcohol level indicated that that [sic] he had a blood alcohol level of .124%. The hospital's blood alcohol test indicated that he had a blood level of .16%. I asked the Blood Technician to draw a blood sample for legal purposes. The blood was booked into the Central jail's evidence locker and those results are pending.

"ANALYSIS AND OPINIONS:
"The charge of 25658(C) of the Business and Professions Code against Jennings is established by the following:
"1. In an interview about the collision, both Fosnaugh and Turpin advised that Jennings furnished and gave beer to Turpin, a person under 21 years of age.
"2. Turpin consumed the beer and due to his state of intoxication caused an auto collision which caused great bodily injury to himself, Fosnaugh, and Smith.
"3. Jennings, who is Both Turpin and Fosnaugh's supervisor, knew that both were under 21 years old. Jennings' knowledge of both Fosnaugh and Turpin's age is established by the fact that he hired both of them to work at Armor Steel and when doing so asked them to fill out an application and also took a photocopy of their identification cards. Both Turpin and Fosnaugh related this in an interview at the hospital.
"4. Turpin related that is common knowledge around work that he and Fosnaugh are the youngest employees that work at Armor Steel.
"5. When I went to Armor Steel on 6-1-00 to talk with Jennings as a witness he told me that he had contacted an attorney and was advised not to talk with me. This shows a consciousness of guilt and helps to establish that Jennings knew both Turpin and Fosnaugh were under 21 and that he should not have given them the beer to drink."
The trial court read the police report and found that it was sufficient to establish beyond a reasonable doubt that defendant was guilty of the crime charged. The trial court found defendant guilty. Defendant requested immediate sentencing, although he asked that execution of the sentence be stayed pending appeal. The trial court sentenced defendant to six months in jail but suspended execution of sentence and placed defendant on three years informal probation conditioned, among other things, on service of 60 days in jail, work project recommended. All terms and conditions were stayed pending appeal.
Defendant filed a timely notice of appeal to the Appellate Division of the Sacramento Superior Court.
The Appellate Division, in a written opinion, affirmed defendant's conviction and certified the case for transfer to this court. This court declined certification but directed the Appellate Division to publish its opinion. Thereafter, the Appellate Division published its opinion.
Defendant then filed an original petition for writ of habeas corpus in the California Supreme Court. The Supreme Court issued an order to show cause on the petition, returnable to this court, and ordered the opinion of the Appellate Division depublished.
In accordance with the direction of our Supreme Court, we have reviewed all the papers submitted by the parties and have heard oral argument in the case.

DISCUSSION
Although the procedural history of this case might suggest that our Supreme *237 Court wishes us to reach a result in this case different from that reached by the Appellate Division of the Sacramento Superior Court, this court would be ill advised to decide a case according to a procedural pattern of tea leaves. The Constitution of the State of California establishes this court as one of independent constitutional authority (Cal. Const., art. VI, §§ 1, 3, 10, 11). We therefore have an obligation to decide this case according to our view of the correct law, unless legally precluded from doing so by the Supreme Court. With respect, nothing that the Supreme Court has done so far compels us to reach a conclusion different from the one we think the law compels.
Before we directed the Appellate Division to publish its opinion in this case, we gave that opinion close study and concluded it correctly resolved the issues. We continue to believe it did. Consequently, we adopt as part of our own opinion the opinion of the Appellate Division of the Sacramento Superior Court which provides in relevant part as follows:
"California Constitution, [a]rticle 20, [s]ection 22 provides in pertinent part, that:
"`The sale, furnishing, giving, or causing to be sold, furnished, or giving away of any alcoholic beverage to any person under the age of 21 years is hereby prohibited, and no person shall sell, furnish, give, or cause to be sold, furnished, or given away any alcoholic beverage to any person wider the age of 21 years, and no person under the age of 21 years shall purchase any alcoholic beverage.' ([Italics] added.)
"[Section] 25658 provides, in pertinent part, as follows:
"`(a) Except as otherwise provided in subdivision (c), every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor.
"`(b) [¶] . . . [¶]
"`(c) Any person who violates subdivision (a) by purchasing an alcoholic beverage for a person under the age of 21 years and the person under the age of 21 years thereafter consumes the alcohol and thereby proximately causes great bodily injury or death to himself, herself, or any other person, is guilty of a misdemeanor.
"`(d) [¶] . . . [¶]
"`(e)(1) Except as otherwise provided in paragraph (2) or (3), any person who violates this section shall be punished by a fine of two hundred fifty dollars ($250), no part of which shall be suspended, or the person shall be required to perform not less than 24 hours or more than 32 hours of community service . . ., or a combination of fine and community service as determined by the court. . . .
"`(2) [¶] . . . [¶]
"`(3) Any person who violates subdivision (c) shall be punished by imprisonment in a county jail for a minimum term of six months not to exceed one year, by a fine not exceeding one thousand dollars ($1,000), or by both imprisonment and fine.
"`(f). . . .' ([Italics] added.)
"There is no language in § 25658 that specifically states whether knowledge or other mens rea is required for a violation of the section.
"`That the statute contains no reference to knowledge or other language of mens rea is not itself dispositive. . . . [T]he requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an *238 element despite their failure expressly to state it.
"`[¶] . . . [¶]
"`Equally well recognized, however, is that for certain types of penal laws, often referred to as public welfare offenses, the Legislature does not intend that any proof of scienter or wrongful intent be necessary for conviction. "Such offenses generally are based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public. [Citation.] `Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.'"' (In re Jorge M. (2000) 23 Cal.4th 866, 872, 98 Cal.Rptr.2d 466, 4 P.3d 297. Internal citations omitted.)
"Defendant/appellant here contends that § 25658(c) requires general criminal intent under the general rule and that it is not a public welfare statute. The People/respondent take the opposite position, arguing that the statute is a strict liability statute. We conclude the People are correct.
"Although there is no case law expressly stating that § 25658(c) is a strict liability statute, there is case law stating that a violation of § 25658, subdivision (a), can occur when alcohol is sold to a minor despite the seller's lack of knowledge that the purchaser is under the age of 21. The California Supreme Court has expressly held that the laws against sales to minors can be violated despite the seller's, or its agents', lack of knowledge of the purchaser's minority. (Provigo Corp. v. Alcoholic Bev. Control Appeals Bd. (1994) 7 Cal.4th 561, 565, 569, 28 Cal.Rptr.2d 638, 869 P.2d 1163.) It has been held that § 25658 does not require that the act be knowingly done. A licensee (seller) can be held to have permitted the violation simply by a showing that the acts themselves took place. (Munro v. Alcoholic Bev. Control Appeals Bd. (1957) 154 Cal.App.2d 326, 329, 316 P.2d 401.) Thus, it appears that § 25658, by itself, is a strict liability statute as applied to persons who violate the statute by selling alcohol to a minor.
"Of course, a seller's liability under § 25658 is not absolute because the Legislature has provided in section 25660 that a seller may protect itself by requesting and relying on bona fide evidence of majority and identity. (Kirby v. Alcoholic Bev. Control Appeals Bd. (1968) 267 Cal.App.2d 895, 898, 73 Cal.Rptr. 352.)) However, as section 25660 refers only to a `seller' it is not certain that any other person could use this as a defense. Since there is no claim here that defendant asked for and relied on any evidence of identification and majority, the applicability of section 25660 to this case is not raised. The issue is only whether § 25658 requires any sort of knowledge of the violation.
"If § 25685(a) [sic] is viewed as a strict liability statute for sellers, there is no grammatical basis for distinguishing persons who violate the section by furnishing or giving the alcohol to a minor. Section 25658(a) simply provides that `any person' selling, furnishing or giving alcohol to a minor is guilty of a misdemeanor. Whatever the plausible basis for distinguishing between sellers and social hosts, the Legislature has not placed such distinction into the statute. It would be difficult to conclude that the statute, which is silent as to intent, contains no intent for sellers but *239 requires general criminal intent for social hosts.
"Defendant contends, however, that the Legislature intended a general intent requirement when it added subdivision[s] (c) and (e)(3) to § 25658, providing that persons who violate subdivision (a) by purchasing alcohol for a minor, which the minor consumes and then causes great bodily injury, are guilty of a misdemeanor punishable by a six months to one year jail term and/or a $1000 fine. At the trial court level, defendant attached several pages of bill analysis for Assembly bill 1204 (AB 1204) and Assembly Bill 2029 (AB 2029), suggesting that the purpose of the statute was to [sic] designed to stop `shoulder tapping'  a process where the minor stands outside a liquor store and asks an adult to purchase alcohol for them [sic]. Defendant contended that this showed that the statute targeted adults who purposefully or willfully bought alcohol for minors. On appeal, defendant contends that in addition to the legislative history, the language of § 25658(c) itself contains an implied intent requirement because it requires that a person purchase alcohol for a person under the age of 21.
"The highlighted portion of § 25658(c) does not necessarily require knowledge or willful purchase. The statute can just as easily be read to be applicable to any person who purchases alcohol for another person, whenever that person happens to be a minor.
"Nor is the legislative history particularly supportive of defendant's position. It is true that the author of the original bill amending § 25658 was motivated by a perceived need for greater punishment for adults who are `shoulder-tapped' and buy alcohol for minors who then drink and drive, causing serious injury. However, a full review of the legislative history arguably indicates an understanding that general intent would not be required for a misdemeanor violation of subdivision (c).
"Specifically, Assembly Bill 2029 originally proposed an amendment to § 25658 to add a subdivision making the purchase of alcohol for a minor, where the minor consumes the alcohol and proximately causes great bodily injury a `wobbler,' either a misdemeanor or a felony. (Assem. Bill No.2029, Stats. 1998 (1997-1998 Reg. Sess.).) [Footnote omitted.] To be a felony, the purchaser `must have known or reasonably should have known that the person for whom he/she was purchasing was under 21 and that the great bodily injury resulted from the minor drinking and driving under the influence.' ( . . . Assem. Bill No.2029, Stats. 1998 (1997-1998 Reg. Sess.) April 21, 1998.) The Assembly Committee of Public Safety indicated at one point that this bill `requires little or no intent on the part of the purchaser of alcohol for underage persons.' (Assem. Com. Public Safety Amend, to Assem. Bill No.2029 Stats. 1998 (1997-1998 Reg. Sess.) March 31, 1998.) When AB 2029 was caught up in a group of bills that were not able to get out of their first committee, the substance of AB 2029 was put into AB 1204. (Sen. Amend. Assem. Bill No. 1204, Stats. 1998 (1997-1998 Reg. Sess.) June 3, 1998.) Concern was expressed about the broadness of the felony provision of the statute and AB 1204 was subsequently amended to take out the felony provision completely, leaving subdivision (c) as a simple misdemeanor provision with no expressed intent requirement. (Sen. Amend. Assem. Bill No. 1204, Stats. 1998 (1997-1998 Reg. Sess.) June 30, 1998.) The substance of AB 1204 was then incorporated into a related bill proceeding through the Senate, SB 1696, to ensure that its provisions would not be superceded [sic] if both bills were enacted and SB 1696 was chaptered last. (Legis. *240 Counsel's Dig., Sen. Bill No. 1696, Stats. 1998 (1997-1998 Reg. Sess.).) (SB 1696) In fact, that is what happened. AB 1204 was chaptered on September 14, 1998. SB 1696 was chaptered on September 18, 1998. Section 25658 was amended to include subdivision (c) by Senate Bill 1696. A review of this history shows that the Legislature considered incorporating an express mental state element into the statute when the subdivision could be prosecuted as a felony. It may be inferred that the Legislature intended the misdemeanor to be a strict liability statute when it deleted the felony provision without moving the requirement of a specific mental state into the remaining misdemeanor portion of subdivision (c).
"The interpretation of § 25658(c) as a strict liability, public welfare statute is also supported by judicial statements of the purpose of the Constitutional and statutory provisions regarding minors obtaining alcohol. In Santa Ana Food Market, Inc. v. Alcoholic Bev. Control Appeals Bd. (1999) 76 Cal.App.4th 570, 575, 90 Cal.Rptr.2d 523, the court stated that the goal of the constitutional and statutory provisions is protecting the public welfare and morals, in the context of the sale of alcoholic beverages. In Provigo Corp. v. Alcoholic Bev. Control Appeals Bd., supra, 7 Cal.4th 561, 567, 28 Cal.Rptr.2d 638, 869 P.2d 1163, the Supreme Court stated that the purpose of the provisions prohibiting sales to and purchases by minors `is to protect such persons from exposure to the "harmful influences" associated with the consumption of such beverages.' The concern is the `welfare of minors' and one purpose of the provision is to `promote temperance in the use and consumption of alcoholic beverages.' In Brockett v. Kitchen Boyd Motor Co. (1972) 24 Cal.App.3d 87, 94, 100 Cal. Rptr. 752, the court stated that the purpose of the statute was to protect minors and members of the general public from injuries resulting from minors[`] use of alcohol. Thus, it appears that § 25658 has generally been interpreted as a public welfare purpose statute.
"Defendant does not address these cases in his appellate brief. Defendant focuses on the analysis set forth in In re Jorge M., supra, 23 Cal.4th 866, 98 Cal.Rptr.2d 466, 4 P.3d 297, for determining whether a statute that is silent as to mental intent contains a mental intent requirement. Applying the seven considerations identified by the Supreme Court in In re Jorge M., defendant claims a mental intent requirement should be read into § 25658(c). The seven considerations identified by the Supreme Court as commonly taken into account in deciding whether a statute should be construed as a public welfare offense are as follows:
"`(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime ("Other things being equal, the greater the possible punishment, the more likely some fault is required"); (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts ("The harder to find out the truth, the more likely the legislature meant to require fault in not knowing"); (6) the difficulty prosecutors would have in proving a mental state for the crime ("The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced"); (7) the number of prosecutions to be expected under the statute ("The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault").' (In re Jorge M., supra, 23 Cal.4th at p. 873, 98 Cal.Rptr.2d 466, 4 P.3d 297.)
*241 "(1) The legislative history of § 25658(c) shows that it was initially proposed as AB 2029 because the author felt the need for punishment greater than the otherwise mandated $250 fine and/or 24 to 32 hours of community service in cases where alcohol was purchased for and consumed by a minor, who then drove under the influence and caused an accident resulting in great bodily injury. As discussed above, the legislative history does not clearly show that the bill was intended to change the established strict liability of subdivision (a) for the misdemeanor provision of subdivision (c). To the contrary, it appears that in rejecting the felony alternative, the legislature may have rejected a mental state element for the remaining misdemeanor provision. Moreover, the purpose of the statute generally appears to be that of a public welfare statute, as expressed by the cases interpreting the section.
"(2) California law contains a general provision in Penal Code Section 20 requiring at least general criminal intent for every crime or public offense. `[S]ection 20 can fairly be said to establish a presumption against criminal liability without mental fault or negligence, rebuttable only by compelling evidence of legislative intent to dispense with mens rea entirely.' (In re Jorge M., supra, at p. 879, [98 Cal.Rptr.2d 466, 4 P.3d 297]. Accord, Staples v. United States (1994) 511 U.S. 600, 606, [114 S.Ct. 1793, 128 L.Ed.2d 608].) Section 20 is applicable except `where the purpose is to protect public health and safety and the penalties are relatively light.' (People v. Simon (1995) 9 Cal.4th 493, 521, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Here there is some legislative intent that the statute is meant to be a strict liability statute. There is case law indicating that the strong public policy reflected by the constitutional provision on the subject and § 25658 makes the statute a public welfare statute. This appears to be one of the exceptions to the general rule.
"(3) Both the California Supreme Court in In re Jorge M., supra, at p. 879-880, [98 Cal.Rptr.2d 466, 4 P.3d 297], and the United States Supreme Court in Staples v. United States, supra, at p. 618, [114 S.Ct. 1793], have expressed the feeling that felony punishment is nearly incompatible with the theory of a public welfare offense. Certainly strong evidence of legislative intent would be necessary to exclude mens rea from such an offense.
"Section 25658 is not a felony statute or even a wobbler. It makes violation of its provisions a misdemeanor. The punishment for a simple violation of subdivision (a) of the section is very light, a $250 fine and/or 24 to 32 hours of community service. The punishment proscribed for a violation of § 25658(c), where great bodily injury has occurred, is admittedly more severe, a $1000 fine and/or six months to one year in county jail.
"However, the sentencing judge retains discretion to place an offender on probation, conditioned on some lesser amount of jail time (as happened in this case), and after successful completion of such probation, the defendant may apply for relief pursuant to Penal Code section 1203.4, allowing the setting aside of defendant's plea or the verdict of guilty and dismissal of the charges. Even a defendant not granted probation may apply under Penal Code section 1203.4a for an order setting aside his/her plea or the verdict and dismissal of the charges if the defendant has successfully completed his/her sentence. While not as minor as an infraction, a misdemeanor conviction under § 25658 does not carry lifelong or extremely serious consequences. This factor does not weigh against finding § 25658 to be a public welfare offense.
*242 "(4) `[W]hen a crime's statutory definition does not expressly include any scienter element, the fact the Legislature intended the law to remedy a serious and widespread public safety threat militates against the conclusion it also intended to impliedly to [sic] include in the definition a scienter element especially burdensome to prove.' (In re Jorge M., supra, at p. 881, [98 Cal.Rptr.2d 466, 4 P.3d 297].) As already discussed, § 25658 is aimed at protecting the public and especially minors from the consequences of their use of alcohol. It has generally been found to be a statute protecting the public welfare and safety.
"(5) `Courts have been justifiably reluctant to construe offenses carrying substantial penalties as containing no mens rea element "where . . . dispensing with mens rea would require the defendant to have knowledge only of traditionally lawful conduct."' (In re Jorge M., supra, at p. 881, [98 Cal.Rptr.2d 466, 4 P.3d 297], quoting from Staples v. United States, supra, at p. 618, [114 S.Ct. 1793].) The more difficult to discern the true facts, the more likely the `legislature meant to require fault in not knowing.' (Id., at p. 873, [98 Cal. Rptr.2d 466, 4 P.3d 297].) Here, except for the age (minority) of the person for whom the alcohol has been purchased, the act of purchasing alcohol for another person is entirely legal. It is debatable whether the true facts (the person's minority) would be easily discernable. It is certainly easy to ask a person's age, but it is not clear what is required if the person does not answer truthfully. The application of this factor may lean towards a mens rea requirement in § 25658(c).
"(6) A statute should not be read as containing any mental state requirement that the prosecution would foreseeably and routinely have special difficulty proving. (In re Jorge M., supra, at p. 884, [98 Cal.Rptr.2d 466, 4 P.3d 297].) `An actual knowledge element has significant potential to impair effective enforcement. Although knowledge may be proven circumstantially . . ., in many instances a defendant's direct testimony or prior statement that he or she was actually ignorant of the [violation] will be sufficient to create reasonable doubt.' (Id., at pp. 884-885, [98 Cal.Rptr.2d 466, 4 P.3d 297].) `A scienter requirement satisfied by proof the defendant should have known . . . would have little or no potential to impede effective enforcement.' (Id., at p. 885, [98 Cal.Rptr.2d 466, 4 P.3d 297].) Requiring the prosecution to prove the defendant knowingly or purposefully purchased alcohol for a minor would foreseeably and routinely make prosecution of 25658(c) cases difficult. As noted, the defendant could by direct testimony or a prior statement simply deny such knowledge or purpose. A criminal negligence standard would probably not impede effective enforcement, although it would require additional significant circumstantial evidence to be produced. No more than a criminal negligence standard should be implied.
"(7) The final consideration is the number of prosecutions expected under the statute. A construction of the statute should not impose a scienter requirement that will `unduly impede the ability to prosecute substantial numbers of violators' where the statute is aimed at a widespread threat. (In re Jorge M., supra, at p. 887, [98 Cal.Rptr.2d 466, 4 P.3d 297].) It is unclear the number of prosecutions anticipated by the Legislature in adopting § 25658(c). The legislative history does seem to indicate a concern that adults purchasing alcohol for a minor, often in a `shoulder-tap' situation, was a significant and not uncommon problem. Statistics showing high levels of alcohol consumption by minors and easy access by minors to *243 alcohol were discussed. (Assem. Com. Public Safety Analysis of Assem. Bill No.2029 as Amend. March 26, 1998 (1997-1998 Reg. Sess.) March 31, 1998 Author's Statement.)
"Applying the seven factors identified by the Supreme Court in In re Jorge M., supra, does not provide a clear and definitive answer to whether the statute should be considered a strict liability statute, but overall, it appears that the factors favor a strict liability construction. Factors 1 and 4 significantly support a construction of § 25658(c) as a public welfare statute imposing strict liability on persons who engage in the prohibited acts. Factor 2 seems neutral, or supportive of strict liability to the extent Factors 1 and 4 suggest the statute is designed to protect the public welfare. Factor 3 may support strict liability. At least it does not weigh against strict liability. Factor 5 leans towards a mens rea requirement and factor 6 marginally suggests a criminal negligence standard might reasonably be applied. Factor 7 is difficult to assess without more information, but seems to fit a strict liability standard.
"In summary, it appears from a review of the language of the statute in context with its legislative history and the case law concerning § 25658(a), plus a review of the seven factors identified by the Supreme Court in In re Jorge M., that the trial court correctly interpreted § 25658(c) as a strict liability statute. Appellant has not shown any error in the trial court's preclusion of his proposed evidence regarding his lack of actual knowledge of the minor's true age and lack of a basis for concluding that he should have known the minor's true age."
In his petition for writ of habeas corpus, defendant quarrels with the opinion of the Appellate Division in various respects which we shall discuss in a moment.
However, at the outset, it is important to note what defendant contends and what he does not. The thrust of defendant's argument is that, for various reasons, the Legislature must have intended that section 25658(c) contain a mens rea requirement. Defendant argues that since the statute contains a mens rea requirement, he was denied his constitutional right to present a defense when the trial court granted the prosecution's motion in limine and excluded his evidence tending to show he believed Turpin was not a minor.
What defendant does not contend is that section 25658(c) would violate guarantees of due process of law if it were construed to be a strict liability offense. (See People v. Simon, supra, 9 Cal.4th 493, 520-522, 37 Cal.Rptr.2d 278, 886 P.2d 1271.) Rather, as tendered by defendant, the issue is the intent of the California Legislature in enacting section 25658(c), and it is that question we address. "[I]t is not this court's function to serve as . . . backup appellate counsel. . . ." (Mansell v. Board of Administration (1994) 30 Cal.App.4th 539, 546, 35 Cal.Rptr.2d 574.) With that said, we turn to defendant's criticisms of the opinion and result reached by the Appellate Division.
Defendant argues that "[t]he case at hand is analytically the same" as In re Jorge M., supra, 23 Cal.4th 866, 98 Cal. Rptr.2d 466, 4 P.3d 297, (which held that, in order to commit the crime of possessing an assault weapon, the offender must know the characteristics of an assault weapon) and People v. Taylor (2001) 93 Cal.App.4th 933, 114 Cal.Rptr.2d 23 (Taylor), where we held that, in order to be guilty of possessing a cane sword, a person must know the cane actually conceals a sword. (Id. at p. 936, 114 Cal.Rptr.2d 23.) However, In re Jorge M. and People v. Taylor are distinguishable from this case in two important respects. First, in both In re Jorge M. and Taylor, the crimes at issue *244 were "wobblers," i.e. crimes punishable either as felonies or misdemeanors, and, in each case, the defendant in fact received a felony sentence. (See In re Jorge M., supra, 23 Cal.4th at pp. 869-870, 98 Cal. Rptr.2d 466, 4 P.3d 297; People v. Taylor, supra, 93 Cal.App.4th at p. 937, 114 Cal. Rptr.2d 23.) By way of contrast, in the instant offense, section 25658(c) is a straight misdemeanor offense. The lack of a possible felony sentence, in the context of other factors specified in In re Jorge M., tends to show that the Legislature treated this crime as a strict liability, regulatory offense.
This case is also distinguished from In re Jorge M. and Taylor on the ground that alcohol has long been the subject of regulation in the state of California whereas assault weapons and cane swords have no similar track record. California's regulation or legislation concerning alcohol includes, in chronological order:
In 1887, the Legislature amended former Political Code section 1667, concerning instruction in schools, by adding that instruction must be given in all school grades "upon the nature of alcoholic drinks and narcotics and their effects upon the human system." (Stats. 1887, ch. 123, § 2, p. 142, amending former Political Code § 1667.)
A 1907 enactment, addressing purity standards of food and liquor, said "The standard of purity of food and liquor shall be that proclaimed by the Secretary of the United States Department of Agriculture." (Stats.1907, ch. 181, § 3, p. 209.)
A 1915 general statute provided: "Any person, firm, association or corporation that sells, gives or delivers to any person any intoxicating liquor at any public schoolhouse or upon any portion of the grounds thereof, is guilty of a misdemeanor and shall be punished by a fine not to exceed five hundred dollars or by imprisonment in a county jail not to exceed six months, or by both such fine and imprisonment." (Stats.1915, ch. 21, § 1, p. 20.)
In 1922, California voters approved on referendum a prohibition enforcement act to enforce the prohibition provision of the United States Constitution, former 18th Amendment. (Stats.1921, ch. 80, p. 79; approved on referendum Nov. 7, 1922; see Stats.1923, p. xcv.; repealed by initiative Nov. 8,1932.)
In 1923, the California Legislature authorized revocation of drivers' license and jail/prison time plus a fine, upon conviction of driving a vehicle under the influence of liquor. (Stats.1923, ch. 266, §§ 72, subd. (b), 112, pp. 534, 553.)
In 1931, the California Legislature added Penal Code section 347b, making it a misdemeanor to furnish alcohol containing any deleterious or poisonous substance. (Stats.1931, ch. 167, § 1, p. 237.) An urgency provision declared the need for the act to take effect immediately because "[d]uring the month of February, 1931, a total of two hundred cases of paralysis and two deaths have resulted in Los Angeles [C]ounty alone from the use, for beverage purposes, of the alcoholic solutions of a potable nature containing deleterious or poisonous substances. There are no penal statutes of this state which control the sale of said alcoholic solutions and it is necessary that immediate action be taken to prevent their improper use in order to prevent further loss of life and to protect the health of the public." (Stats.1931, ch. 167, § 2, p. 238.)
The state constitutional provision authorizing regulation of alcohol  article XX, section 22 of the California Constitution  was first adopted in November 1932, to allow state regulation of liquor "[i]n the event" Prohibition was repealed. (Deering's *245 Ann.Codes (1999 ed.) Const., art. XIII-end, p. 413.)
After the repeal of Prohibition by the 21st Amendment to the United States Constitution (ratified Dec. 5, 1933), California in 1935 adopted the Alcohol Beverage Control Act as an uncodified act (Stats. 1935, ch. 330, § 1, p. 1123), and then codified it in the Business and Professions Code in 1953 (Stats.1953, ch. 152, § 1, p. 1020). (Coots Brewing Co. v. Stroh (2001) 86 Cal.App.4th 768, 775, fn. 4, 103 Cal. Rptr.2d 570.)
Thus, alcohol has long been the subject of regulation in the State of California. Indeed, such regulation is considered so important that it is expressly recognized in our state Constitution. Neither assault weapons nor cane swords share this long, pervasive history of regulation.
In his petition, defendant argues "[s]ection 25658(c) falls within Chapter 16 (entitled `Regulatory Offenses'), Article 3 (entitled `Women and Minors') of the Business and Professions Code. When [section] 25658(c) is read in conjunction with the statutes around it, such as [sections] 25660, 25658.5 and 25659, it is clear that this Chapter was designed to regulate licensees. However, this code section is distinctly different from the other statutes around it, in that it provides for a minimum six-month jail term for offenders." (Footnotes omitted.)
It is unclear whether defendant is arguing that section 25658(c) applies only to those licensed by the Alcoholic Beverage Commission and therefore not to defendant himself. To the extent defendant makes this argument we reject it. The plain meaning of section 25658 says that "no person" shall furnish alcohol, etc. This reference is unambiguous and includes persons other than licensees. Moreover, the legislative history of the statute, as recounted by the Appellate Division, also strongly supports the view that the statute was meant to apply to ordinary citizens and not simply to licensees. Interestingly, defendant's argument illuminates another compelling reason why this offense should be treated as a strict liability regulatory offense: as defendant recognizes, the Legislature placed this statute in a series of statutes defined by the Legislature itself as "Regulatory Provisions." (Stats.1953, ch. 152, § 1, p. 1020.) Why should we not take the Legislature at its word?
Defendant next argues, "[t]he existence of [section] 25660 supports the argument that [section] 25658(c) requires at the least a showing of criminal negligence. Licensees are held strictly liable when selling alcohol to minors, unless they fall within [section] 25660. Licensees can not [sic] be provided more protection than any other group of people, simply due to their status as licensees." We disagree. Section 25660 provides in pertinent part that "[p]roof that the defendant-licensee, or his employee or agent, demanded, was shown and acted in reliance upon such bona fide evidence in any transaction, employment, use or permission forbidden by Sections 25658, 25663 or 25665 shall be a defense to any criminal prosecution therefor or to any proceedings for the suspension or revocation of any license based thereon." As defendant recognizes, this statute does not apply to persons other than licensees. To the extent that defendant may be making an argument that section 25660 violates the constitutional doctrine of equal protection of the laws, this argument is waived for failure to provide any authority to support it. (Kim v. Sumitomo Bank (1993) 17 Cal.App.4th 974, 979, 21 Cal.Rptr.2d 834.) In any event, the Legislature could rationally decide to provide this defense to licensees whose business it is to serve consumers in vast numbers on a day-to-day basis and to withhold this defense from ordinary *246 citizens. Indeed, the fact that the Legislature expressly provided for a knowledge defense in section 25660, but not in section 25658(c), is more evidence that it did not intend that knowledge be a requirement for violation of section 25658(c), a companion statute. "`"`It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.'"' [Citations.]" (People v. Franz (2001) 88 Cal. App.4th 1426, 1440, 106 Cal.Rptr.2d 773.)
Indeed, a review of other statutes found in article 3 of chapter 16 of division 9 of the Business and Professions Code (where section 25658(c) is found) indicates that the Legislature knows very well how to impose a "knowledge" requirement when it wants to.
Thus, section 25657, subdivision (b) provides that it is unlawful "[i]n any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting."
Similarly, subdivision (d) of section 25658 itself provides: "Any on-sale licensee who knowingly permits a person under the age of 21 years to consume any alcoholic beverage in the on-sale premises, whether or not the licensee has knowledge that the person is under the age of 21 years, is guilty of a misdemeanor." (Italics added.) Although this statute expressly makes a licensee liable for permitting a minor to consume alcohol on the premises, even where the licensee does not know the minor is under the age of 21 years, we do not infer that the Legislature must add this language to a statute in order to make a person strictly liable for furnishing alcohol to a minor. Rather, subdivision (d), unlike subdivision (c), provides that a licensee must knowingly permit a minor to consume alcohol to commit the offense. The language referring expressly to lack of knowledge of the minor's age is necessary to clarify what the Legislature meant by the precedent reference to "knowingly." Apparently, the Legislature intended that a licensee must know that a person is consuming alcohol on the premises (and not, for example, surreptitiously in a rest-room) but if the licensee has such knowledge, the licensee is guilty even if the licensee does not know the person consuming the alcohol is under age 21, unless the licensee has obtained bona fide evidence of majority as provided in section 25660. Read in its entirety, then, subdivision (d) reinforces our view that a person can violate subdivision (c) of section 25658 (which, again, contains no requirement that a person "knowingly" furnish alcohol) without knowing that the minor is under age 21.
Defendant next argues that the severity of punishment provided for violation of section 25658(c) demonstrates that this is not a strict liability offense. Defendant argues that the minimum county jail sentence of six months is too great to provide for a regulatory offense. However, in People v. Matthews (1992) 7 Cal.App.4th 1052 at page 1057, 9 Cal.Rptr.2d 348, the court held that violation of Health and Safety Code section 25190 [improper storage and labeling and permitting the leaking of hazardous waste containers] was a strict liability offense. Health and Safety Code section 25190 provides for imprisonment for up to six months in the county jail. Our Supreme Court cited People v. Matthews, supra, with approval in In re Jorge M., supra, 23 Cal.4th at page 872, 98 Cal. *247 Rptr.2d 466, 4 P.3d 297. We presume that, by doing so, our Supreme Court did not conclude that a sentence of six months in prison disqualified an offense from being a regulatory, strict liability offense. Moreover, as we have noted, a sentencing court retains the power to grant probation and effectively to impose a very modest period of incarceration if the circumstances warrant it.
Defendant also argues, "[t]here is no compelling evidence demonstrating that the Legislature intended to dispense with the mens rea requirement in enacting [section] 25658(c). Without that compelling evidence, a mens rea or scienter requirement must be read into the statute." However, we think that "compelling evidence" is found in the following:
(1) The legislative history of the statute, which the Appellate Division discussed at length, and with which defendant has no significant quarrel, indicates a compelling intent by the Legislature that the crime should be a strict liability, regulatory offense. In reaching this conclusion, we have in mind that the "compelling evidence of legislative intent" (In re Jorge M., supra, 23 Cal.4th at p. 879, 98 Cal.Rptr.2d 466, 4 P.3d 297) arises only where the statute is silent with respect to any requirement of intent. Thus, for example, had the Legislature said that knowledge was required to commit the offense, resort to legislative history would be unnecessary. In this context, the legislative history discussed by the Appellate Division presents a compelling record that the Legislature chose to reduce punishment for the offense from a "wobbler" to a misdemeanor to satisfy criticism that the offense required no mens rea.
(2) The placement of section 25658(c) in a series of statutes denominated by the Legislature as "Regulatory Provisions" strongly suggests the Legislature intended the statute to be a strict-liability regulatory offense.
(3) The fact that companion statutes contain an express knowledge requirement suggests the Legislature did not intend such a knowledge requirement was necessary for violation of section 25658(c).
(4) The fact that subdivision (c) of section 25658 uses language similar to subdivision (a) of the same statute, after subdivision (a) had been construed by our Supreme Court not to require knowledge of the minor's true age.
(5) The fact that knowledge of a minor's true age would make prosecutions for the offense burdensome and would result in much litigation over knowledge of the true age of minors suggests the Legislature would not have intended such a result in a statute regulating the furnishing of alcohol, which has traditionally been the subject of regulation for decades.
For all these reasons, then, we find "compelling evidence" that the Legislature intended that section 25658(c) should be applied according to its plain meaning, so that a person need not know that the minor is, in fact, under age 21 in order to violate the statute.
Finally, defendant contends he was entitled to admission of the challenged evidence in order to put on a mistake-of-fact defense. In petitioner's view, Penal Code sections 20[2] and 26[3] demonstrate the Legislature's *248 intent to criminalize only those acts committed with a wrongful intent. (See People v. Mayberry (1975) 15 Cal.3d 143, 154, 125 Cal.Rptr. 745, 542 P.2d 1337.)
This contention is answered by the opinion of the California Supreme Court in People v. McClennegen (1925) 195 Cal. 445, 234 P. 91, which is discussed in People v. Telfer (1991) 233 Cal.App.3d 1194, 1198-1199, 284 Cal.Rptr. 913 as follows:
"CALJIC No. 3.30 embodies the statutory requirement that, ordinarily, `[i]n every crime or public offense there must exist a union, or joint operation of act and intent. . . .' (Pen.Code, § 20.) That intent is variously known as mens rea, a guilty mind, guilty knowledge, or some other term denoting a culpable mental state. (1 Witkin & Epstein, Cal.Criminal Law (2d ed. 1988) Elements of Crime, §§ 97-98, pp. 115-117.)
"However, that general rule does not always apply to public welfare offenses created by statute. (1 Witkin & Epstein, supra, § 110, pp. 129-131.) As our Supreme Court said long ago: `A mistake of fact, or a want of intent, is not in every case a sufficient defense for the violation of a criminal statute. Statutes enacted for the protection of public morals, public health, and the public peace and safety are apt illustrations of the rule just announced. [Citations.] . . . "The maxim actus non facit reum, nisi mens sit rea,[4] does not always apply to crimes created by statute, and therefore if a criminal intent is not an essential element of a statutory crime, it is not necessary to prove any intent in order to justify a conviction. Whether a criminal intent or guilty knowledge is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute, in view of its manifest purpose and design. There are many instances in recent times where the Legislature in the exercise of the police power has prohibited, under penalty, the performance of a specific act. The doing of the inhibited act constitutes the crime, and moral turpitude or purity of the motive by which it was prompted and knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. . . ."' (People v. McClennegen [,supra,] 195 Cal. 445, 469-470, 234 P. 91, quoting from 8 R.C.L., p. 62.)"
As we have recounted, section 25658(c) is a regulatory statute enacted for the protection of public morals and public health, and, as such, no mistake-of-fact defense is available. (People v. McClennegen, supra, 195 Cal. 445, 469-470, 234 P. 91.)
Defendant's remaining contentions as to why the writ should issue are satisfactorily addressed and rebutted in the Appellate Division's opinion.
*249 The trial court correctly ruled that section 25658(c) is a regulatory, strict liability offense and, accordingly, properly granted the prosecution's in limine motion to exclude defendant's evidence tending to show that he did not know the person to whom he furnished alcohol was a minor.

DISPOSITION
The petition for writ of habeas corpus is denied.
We concur: NICHOLSON and KOLKEY, JJ.
NOTES
[1] All statutory references are to the Business and Professions Code unless otherwise indicated.
[2] Penal Code section 20 provides:

"In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence."
[3] Penal Code section 26 provides:

"All persons are capable of committing crimes except those belonging to the following classes:
"One  Children under the age of 14, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.
"Two  Idiots.
"Three  Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent.
"Four  Persons who committed the act charged without being conscious thereof.
"Five  Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence.
"Six  Persons (unless the crime be punishable with death) who committed the act or made the omission charged under threats or menaces sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."
[4] "`An act does not make [the doer of it] guilty, unless the mind be guilty. . . .' (Black's Law Diet. (5th ed.1979) p. 34.)"